**C. J. TOWER & SONS OF BUFFALO, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 81–26.**

United States Court of Customs and Patent Appeals.

March 18, 1982.

Rehearing Denied May 6, 1982.

---

Robert A. Vanderhye, Washington, D. C., for appellant.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Attorney-in-Charge, and Jerry P. Wiskin, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Associate Judges.

BALDWIN, Judge.

This matter is before us on appeal by C. J. Tower & Sons of Buffalo, Inc. (appellant) from the judgment of the United States Court of International Trade, 1 CIT ——, 520 F.Supp. 1211 (1981). The court held that the imported merchandise (invoiced as automatic livestock waterers or animal nipple drinkers) was properly classified as "valves" under item 680.22 of the Tariff Schedules of the United States (TSUS)[1] and thus was excluded from duty-free classification under item 666.00, TSUS, as "agricultural * * * implements not specially provided for." We reverse.

*Background*

The imported merchandise, illustrated below, is used to supply water to hogs on demand.

PERSPECTIVE VIEW

CROSS-SECTIONAL VIEW

In use the waterer is connected to a pressurized water supply and is activated to deliver flow-regulated clean water directly into a hog's mouth by the hog's placing its mouth over the bevel-shaped watering tube and biting down on the valve stem. Such biting causes an opening between the valve member and its O-ring seat, thus allowing water to flow from the supply through the filter screen and the flow restrictor, through the valve portion, and into the watering tube. The filter screen removes from the fluid flow particulate matter which may lodge in the flow restrictor orifice or otherwise cause waterer malfunctioning. The flow restrictor functions to reduce the fluid flow of the pressurized water that is to be delivered to the hog's mouth. The watering tube functions to deliver water directly into the animal's mouth. Additionally, by shielding the valve stem, the watering tube protects against accidental actuation of the waterer.

According to the court below, the record established that the hog waterer in issue is an agricultural implement within the intendment of Congress; however, the court stated that Congress did not intend free entry under item 666.00, TSUS, to every agricultural implement, noting the language of headnote 1, Part 4, Subpart C of Schedule 6, TSUS, i.e., "[t]he provisions of item 666.00 for 'agricultural and horticultural implements not specially provided for' do not apply * * * to any of the articles specially provided for elsewhere in the tariff schedules."

1. Item 680.22 provides in pertinent part as follows:

> Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof:
>
> Hand-operated and check, and parts thereof:
>
> * * * *
>
> 680.22    Other ............... 11% ad val.

After citing Webster's *Third New International Dictionary* definition of "valve" and the description of valves in the *Summaries of Trade and Tariff Information* (1969), and a statement in the latter about item 680.22, TSUS, the court determined that "Congress intended to encompass within the tariff provisions for taps, cocks, valves and similar devices those articles used to control the flow of liquids, etc." 520 F.Supp. at 1216. The court found that to control the flow of liquids, etc. was "the primary and sole purpose of the imported merchandise." 520 F.Supp. at 1216. As such, according to the court below, the hog waterer in issue was not "more than" a "valve," and thus was provided for under item 680.22, TSUS, and excluded from classification under item 666.00, TSUS.

Finding for the Government on the issue that the imported merchandise was a "valve," the court concluded that it was unnecessary to consider the Government's alternative contention that the hog waterer was a device similar to a valve and thus encompassed by item 680.22, TSUS, or to consider other positions urged by both parties.

While stating that the opinion of the court below properly summarizes the testimony in the case, properly states that the chief use of the imported merchandise is as an agricultural implement, and properly sets forth the standard applied when considering the "more than" doctrine, appellant argues on appeal that the court improperly concluded that the imported merchandise was not "more than" a "valve."

Appellant contends that:

[T]he court erred in *not* (a) specifically finding any additional physical features of the imported merchandise over the common definition of the term in the assessed tariff provision, (b) evaluating differences in character and function of the determined physical differences, and (c) determining whether or not the determined physical differences—in conjunction with differences in character or function resulting therefrom—dedicate the merchandise to a particular use, rendering it useless for other purposes.

Continuing, appellant states that the record shows there are four major parts of the imported merchandise: a valve, a watering tube, a flow restrictor, and a filter; states that with the particularly constructed water tube, the flow restrictor, and the filter of the hog waterer there are three important physical differences between imported merchandise and the "taps, cocks, or valves" of item 680.22, TSUS; and states that the functions of the three distinguishing physical features are clearly distinct from the functions of a valve.

Appellant maintains that the valve portion of its waterer is the least important of the four major parts used in performing the waterer's primary function of delivering a clean, flow-regulated water supply directly into a hog's mouth.

Appellant then concludes its primary argument by stating that:

The significant physical distinctions between the imported merchandise and taps, cocks, and valves, and the differences in function and character that those physical distinctions impart to the merchandise, dedicate the imported merchandise to the exclusive use of watering animals, particularly hogs, and thus the imported merchandise is clearly "more than" a valve under the precedents.

The Government, of course, argues that the imported merchandise is classifiable as a "valve" under item 680.22, TSUS. It contends that since the common meaning of the term "valve" is a mechanical device for starting, stopping, or regulating the flow of water or any other liquid through a pipe or passageway and since the waterer's primary and sole purpose is to control the flow of liquids, the imported merchandise comes within the common meaning of the term "valve."

Regarding the "more than" issue, the Government maintains that to the extent the waterer has a function other than a valve function, it is "more than" a "valve" only if the second function is coequal and not incidental, subsidiary, or auxiliary. The Government asserts that the function of the

imported merchandise's watering tube is that of a spout which merely facilitates the valve function and is incidental to the primary valve function. Similarly, the filtering function of the filter screen and the flow restrictor's function are merely incidental to the waterer's primary function, i.e., to control the flow of a liquid. Thus, according to the Government, the waterer is not "more than" a "valve."

Finally the Government argues that even if the imported merchandise is not a "valve," it is still properly classifiable under item 680.22, TSUS, as a device similar to a valve.

## OPINION

■■■■ As properly stated by the court below, to determine if an article is "more than" that provided for in a particular tariff provision, the common meaning of the tariff term must be determined and compared with the imported merchandise before the court. *See, e.g., Ozen Sound Devices v. United States*, 67 CCPA 67, C.A.D. 1246, 620 F.2d 880 (1980). Furthermore, it is well settled that what constitutes the common meaning of a tariff term is a question of law and that the court may consult dictionaries, scientific authorities, and other reliable information sources to ascertain that common meaning. *Schott Optical Glass, Inc. v. United States*, 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979).

■■ In ascertaining the common meaning of the term "valve" of item 680.22, TSUS, the court below concluded that *any* device which is used to control the flow of liquids would be a "valve." Such a definition for a valve is extremely broad, encompassing any structure or structures which in any way would contain, control, or otherwise affect a body of water or its flow, many of which would not and could not normally be considered a valve: for example, an orifice in a pipe (similar to appellant's flow restrictor), a hose, a water pump, a seawall, a castle moat, or the Erie Canal. As broadly defined, the term "valve" would also encompass the imported hog waterer since it does, in fact, control the flow of water.

We believe a more realistic concept of the common meaning of the term "valve" is the one urged by appellant and set forth in Webster's *Third New International Dictionary* (also quoted by the court below):

valve * * * b(1): any of numerous mechanical devices by which the flow of liquid, air or other gas, or loose material in bulk may be started, stopped, or regulated by a movable part that opens, shuts, or partially obstructs one or more parts or passageways.

The court below broadly categorized the hog waterer's primary and sole purpose to be one of controlling the flow of liquids on one occasion (520 F.Supp. 1216) and also stated that the record established "to the satisfaction of the court that the sole and, therefore, chief use of the imported merchandise is to supply water to hogs." 520 F.Supp. 1214. While both statements are true, a more specific representation of the imported merchandise's primary function as shown by the evidence of record is that the device functions to deliver a clean, flow-regulated supply of drinking water directly into an animal's mouth on demand.

Comparing the common meaning of the term "valve" as defined above with appellant's hog waterer and its specific function, it is clear that the hog waterer is "more than" a "valve." While containing a valve to turn on and off the water flow (see particularly the valve stem, O-ring seat and valve member portions denoted in the illustration above), the waterer also incorporates a watering tube, a flow restrictor, and a filter in order to accomplish its specific function.

The watering tube functions, by operating in conjunction with the valve stem, to deliver water directly into the hog's mouth on demand and to protect against accidental operation of the waterer by shielding the valve stem. These functions are not related to the function of a valve per se. The flow restrictor functions to reduce the fluid flow of the pressurized water that is to be delivered to the hog's mouth, a func-

tion completely different from that of a valve. The filter screen removes from the fluid flow particulate matter which may lodge in the flow restrictor orifice or otherwise cause malfunctioning of the waterer.

All three of these physical features are clearly distinct from a mere valve function in that they are not related to the control of fluid flow "by a movable part that opens, shuts, or partially obstructs one or more parts or passageways." Webster's *Third New International Dictionary*, supra. Additionally, appellant's hog waterer would not function as intended without the use of these three components.[2] Therefore, considering the specific function of the imported merchandise and the collective effect of the watering tube, flow restrictor, and filter screen, all of which cannot be considered incidental, subsidiary, or auxiliary to a valve function, we conclude that appellant's hog waterer is "more than" a "valve."[3] Accordingly, the imported merchandise is not encompassed by the "valve" provision of item 680.22, TSUS.

Such a ruling leads us to the Government's alternative contention, i.e., even if the imported merchandise is "more than" a "valve," it is nevertheless still classifiable under item 680.22, TSUS, as a device similar to a valve.[4] Specifically, the Government argues that the imported merchandise is "specially provided for" under the "similar devices" provision of item 680.22, TSUS, and thus excluded from classification under item 666.00, TSUS.

Where there is a use provision qualified by a "not specially provided for" clause competing with a descriptive provision, the descriptive provision prevails unless it describes the merchandise in such vague and general terms that it cannot be held to specially provide for such goods. See, *United States v. Miracle Exclusives, Inc.*, 69 CCPA ——, 668 F.2d 498 (1981) and *United States v. Lansen-Naeve Corp.*, 44 CCPA 31, 34, C.A.D. 632 (1957).

Here we have the language of headnote 1, Part 4, Subpart C of Schedule 6, TSUS, supra, which excepts from item 666.00, TSUS, only items *specially* provided for elsewhere. And we have the "similar devices" provision of item 680.22, TSUS, which concern "devices [similar to taps, cocks, and valves], however, operated, used to control the flow of liquids, gases or solids, all the foregoing and parts thereof: Hand-operated and check, and parts thereof: * * * other," a very broad and nebulous classification. The "similar devices" provision of item 680.22, TSUS, is not sufficiently specific to "specially provide" for the articles it contains. Thus, *even if* the im-

---

2. On the contrary, appellant's evidence establishes that even without the valve portion of the hog waterer, the merchandise would perform its intended function of delivering a clean, flow-regulated supply of drinking water directly into an animal's mouth on demand. In fact, according to the evidence, pigs are taught to drink from the waterer by the rendering of the valve portion inoperative so that the device delivers a constant, flow-regulated stream through the watering tube.

3. *Durst Industries, Inc. v. United States*, 73 Cust.Ct. 160, C.D. 4568 (1974), an opinion by the predecessor to the court below, is cited by the Court of International Trade and the Government as support for the position that the imported merchandise is classifiable within item 680.22, TSUS. However, in *Durst*, the combination faucets were found properly classifiable as "taps" or "cocks" under item 680.20, TSUS, (a provision identical to item 680.22, TSUS, considered in this appeal, except for the requirement that the goods be of copper); and while the centerset faucets were "more than"·

taps or cocks, they were found to be classifiable as "similar devices" to taps, cocks, or valves under item 680.20, TSUS. In the present appeal we are not concerned with taps or cocks. Additionally, as we establish subsequently in this opinion, it is immaterial whether or not the imported merchandise is a device similar to taps, cocks, or valves since the "similar devices" provision is not sufficiently specific to "specially provide" for the goods to exclude them from item 666.00, TSUS.

4. As noted previously, the court below did not reach this issue. A remand could, therefore, be ordered for the determination of the merits of the issue by the lower court. The Government urges this court, in the interest of judicial economy, to determine this alternative contention (if it must be reached) as a matter of law without remand. We agree with the Government regarding the lack of necessity for a remand and will dispose of this alternative contention herein.

ported merchandise could be considered encompassed by that portion of item 680.22, TSUS, the imported merchandise is still classifiable as "agricultural * * * implements not specially provided for" under item 666.00, TSUS.

### Conclusion

The judgment of the Court of International Trade that the imported merchandise is not properly classifiable under item 666.-00, TSUS, is *reversed.*

