**ROCKNEL FASTENER, INC.,
Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 01–1006.**

United States Court of Appeals,
Federal Circuit.

Oct. 4, 2001.

Steven P. Sonnenberg, Sonnenberg & Anderson, of Chicago, Illinois, argued for plaintiff-appellant. Of counsel was Michael J. Cunningham.

Amy M. Rubin, Attorney, New York, NY, argued for defendant-appellee. With her on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Sheryl A. French, Attorney, Office of Assistant Chief Counsel, United States Customs Service, of New York, NY.

Before SCHALL, BRYSON, and DYK, Circuit Judges.

BRYSON, Circuit Judge.

Rocknel Fastener, Inc., appeals from the decision of the Court of International Trade upholding the tariff schedule classification by the United States Customs Service of certain fasteners imported by Rocknel. *Rocknel Fastener, Inc. v. United States,* 118 F.Supp.2d 1238 (Ct. Int'l Trade 2000). We affirm.

I

The products at issue in this case consist of a variety of metal fasteners that Rocknel imported from Japan in 1997. The fasteners, which are fabricated from metal alloys, have rod-shaped bodies and hexagonally shaped heads. Their bodies are fully or partially threaded. Rocknel has admitted that the fasteners were designed to be installed in holes of assembled parts and that the fasteners were designed to be tightened or released by turning their heads.

The Customs Service liquidated the fasteners under subheading 7318.15.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Subsequently, Rocknel filed a protest, claiming that the fasteners should have been classified under HTSUS subheading 7318.15.20.

Heading 7318 of the HTSUS covers "screws, nuts, coach screws, screw hooks, rivets, cotters, cotter pins, washers ... and similar articles of iron and steel." Six-digit subheading 7318.15 narrows that category to threaded articles consisting of "other screws and bolts." That six-digit subheading is further divided into several eight-digit subheadings, including the two at issue in this case. Subheading 7318.15.20, which Rocknel argues should have been applied to the fasteners in this case, covers "bolts." Subheading 7318.15.80, which Customs applied, covers "other" items having threads with a diameter of six millimeters or more.

After Customs denied the protest, Rocknel appealed to the Court of International Trade. The court concluded that the tariff schedule required that the terms "bolt" and "screw" be given mutually exclusive definitions. The court further concluded that the definition of the terms "bolt" and "screw" found in Specification B18.2.1, Specifications for Identification of Bolts and Screws, published by the American National Standards Institute (ANSI) and the American Society of Mechanical Engineers (ASME) ("the ANSI Specification") accurately reflected both the common and the commercial meaning of those terms. Because Customs had looked to the ANSI Specification as the source of the definitions of "bolt" and "screw" for tariff classification purposes, and because Rocknel had admitted that under the ANSI Specification the fasteners at issue in this case would be classified as screws and not bolts, the court granted summary judgment to Customs upholding the agency's classification of the fasteners. This appeal followed.

II

A

The meaning of a tariff term, a matter of statutory construction, presents a question of law. *Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1366 (Fed. Cir.1998). When, as in this case, a tariff term is not defined in either the HTSUS or its legislative history, "the term's correct meaning is its common meaning." *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994). The common meaning of a term used in commerce is presumed to be the same as its commercial meaning. *Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). To ascertain the common meaning of a term, a court may consult "dictionaries,

scientific authorities, and other reliable information sources" and "lexicographic and other materials." *C.J. Tower & Sons v. United States,* 69 C.C.P.A. 128, 673 F.2d 1268, 1271 (CCPA 1982); *Simod,* 872 F.2d at 1576.

The government agrees with the Court of International Trade that the ANSI Specification represents the common meaning of the terms "bolt" and "screw." Rocknel disputes that the ANSI Specification embodies the common meaning of the terms and asserts that Customs has not satisfied its burden of showing why a non-common meaning should be adopted. *See Rohm & Haas Co. v. United States,* 727 F.2d 1095, 1097 (Fed.Cir.1984) ("One who argues that a term in the tariff laws should not be given its common or dictionary meaning must prove that there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade.").

### B

■ At the outset, we must consider whether, and to what extent, Customs' classification decision in this case is entitled to deference. The Court of International Trade, relying on this court's decision in *Mead Corp. v. United States,* 185 F.3d 1304 (Fed.Cir.1999), concluded that no deference was due Customs' classification. Although the Court of International Trade correctly applied our decision in *Mead,* that decision has been superseded by the Supreme Court's subsequent decision in the *Mead* case. *United States v. Mead Corp.,* ── U.S. ──, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). The Supreme Court held that when Customs has not promulgated a regulation, but has simply issued a classification ruling implicitly interpreting an HTSUS provision, the ruling is not entitled to so-called *Chevron* deference, *see Chevron U.S.A., Inc. v. Natural*

*Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Nonetheless, the Court held that a classification ruling is entitled to some deference in accordance with the principles of *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *Mead,* 533 U.S. at ──, 121 S.Ct. at 2168; *see also Gen. Elec. Co.—Med. Sys. Group v. United States,* 2001 WL 845709, 2001 U.S.App. LEXIS 15971 (Fed.Cir.2001); *Heartland By Products, Inc. v. United States,* 264 F.3d 1126, 2001 U.S.App. LEXIS 19346 (Fed.Cir. 2001). As the Court explained in *Skidmore,*

> The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

323 U.S. at 140, 65 S.Ct. 161. Likewise, *Mead* indicates that when considering the degree of deference to accord a Customs classification ruling, a court should consider "its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." 533 U.S. at ──, 121 S.Ct. at 2176.

■ Customs has not issued a regulation regarding construction of the terms "bolt" and "screw" in the tariff schedule. However, Customs' policy of applying the ANSI Specification has been established in Headquarters Ruling Letters dating back more than 16 years, *see* Headquarters Ruling Letter 951362 (June 24, 1992); Headquarters Ruling Letter 074950 (Feb. 15, 1985), and in a Customs Service publication, *Distinguishing Bolts from Screws* (April 1995). The rulings and the publication contain detailed guidance as to the distinction between bolts and screws, con-

sistent with the ANSI Specification. Because the classification in this case is supported by thorough analysis in Customs' publications and decisions, and is consistent with prior interpretations of the pertinent provisions of the HTSUS by Customs over a period of years, the Supreme Court's decision in *Mead* indicates that Customs' decision to interpret the provisions of HTSUS subheadings 7318.15.20 and 7318.15.80 according to the definitions contained in the ANSI Specification must be accorded some deference by the courts. As the Supreme Court recognized, the regulatory scheme at issue in this case is highly detailed, and Customs "can bring the benefit of specialized experience to bear on the subtle questions in this case." *Mead*, 533 U.S. at ——, 121 S.Ct. at 2175. For that reason, while we recognize our independent responsibility to decide the legal issue of the proper tariff classification in this case, we also recognize our responsibility to give some deference to Customs' interpretation as we do so.

### C

Rocknel argues that the Court of International Trade erred when it assigned the terms "bolt" and "screw" mutually exclusive definitions. Rocknel asserts that because subheading 7318.15.20 is an *eo nomine* classification for "bolts," while subheading 7318.15.80 is a "basket" category for "other" products, the correct classification requires only that a particular fastener satisfy the definition of a "bolt," regardless of whether it might also be regarded as being a screw.

■ We agree with the Court of International Trade that whether or not heading 7318.15.80 is considered to be a "basket" category, the structure of the tariff schedule requires that the terms "bolt" and "screw" be given mutually exclusive definitions. Simply put, because subhead-

ing 7318.15 covers bolts and screws, and subheading 7318.15.20 covers bolts, subheading 7318.15.80 is necessarily limited to screws. Therefore, the proper classification of a particular fastener requires a determination whether the fastener is a bolt or a screw and does not allow for the possibility that the fastener might qualify as either.

### D

■ The ANSI Specification that Customs adopted as the basis for its distinction between bolts and screws is included in *Fastener Standards* (6th ed.1988), which is published by the Industrial Fasteners Institute. The ANSI Specification begins with two general definitions:

Bolt: A bolt is an externally threaded fastener designed for insertion through holes in assembled parts, and is normally intended to be tightened or released by torquing a nut.

Screw: A screw is an externally threaded fastener capable of being inserted into holes in assembled parts, of mating with a preformed internal thread or forming its own thread, and of being tightened or released by torquing the head.

The specification then presents four primary criteria, two of which define products that are always bolts and two of which define products that are always screws. The primary criteria dictate that an externally threaded fastener is a bolt if it can be tightened or released only by torquing a nut or if it must be assembled with a nut to perform its intended service. The fastener is a screw, according to the primary criteria, if its thread form prevents it from being assembled with a nut having a straight thread of multiple pitch length, or if it must be torqued by its head into a tapped or other preformed hole to perform

its intended service. The parties agree that the imported products at issue in this case are not governed by any of the four primary criteria.

The specification continues by providing nine supplemental criteria to be used in defining fasteners that cannot be identified based on the primary criteria. The specification explains that if a fastener satisfies a majority of the supplemental criteria, it is classified as a screw. The nine criteria are, in summary: (1) the fastener has a controlled fillet at the junction of the head and the body; (2) the under head bearing surface of the fastener is smooth and flat; (3) the angularity of the under head bearing surface of the fastener is controlled; (4) the body of the fastener is closely controlled in accuracy of size and roundness; (5) the shank of the fastener is particularly straight; (6) the threads of the fastener are concentric with the body axis; (7) the length of the thread on the fastener is sufficient to develop the full strength of the fastener; (8) the fastener has a chamfered or other specially prepared point at its end; and (9) the length of the fastener is closely toleranced. The parties agree that the imported fasteners satisfy a majority of those nine criteria.

Customs argues that the definitions of bolt and screw embodied in the ANSI Specification should be used for tariff purposes because those definitions conform to the common meaning of the terms. To test that proposition, we look to several technical and general dictionary definitions:

> The bolt is described as an externally threaded fastener designed for insertion through holes in assembled parts. It is normally tightened and released by turning a mated nut. A screw differs from a bolt in that it is supposed to mate with an internal thread into which it is tightened or released by turning its head. These definitions obviously do not always apply, since bolts can be screwed into threaded holes and screws can be used with nuts.

*Millwrights and Mechanics Guide* 371 (4th ed.1986), *quoted in Rocknel,* 118 F.Supp.2d at 1243.

> A bolt is an externally threaded fastener designed for insertion through holes in assembled parts, and is normally intended to be tightened or released by torquing a nut.

> A screw is an externally threaded fastener capable of being inserted into holes in assembled parts, or mating with a preformed internal thread or forming its own thread and of being tightened or released by torquing the head.

Erik Oberg et al., *Machinery's Handbook* 1417 (25th ed.1996).

> Bolt: "A threaded metal rod or pin for joining parts, having a head and usually used with a nut."

> Screw: "A mechanical device for fastening things together, consisting essentially of a cylindrical or conical piece of metal threaded evenly around its outside surface with an advancing spiral ridge and commonly having a slotted head: it penetrates only by being turned, as with a screwdriver."

*Webster's New World Dictionary* 157, 1206 (3d ed.1988), *quoted in Rocknel,* 118 F.Supp.2d at 1241–42.

> Bolt: "A fastener consisting of a threaded pin or rod with a head at one end, designed to be inserted through holes in assembled parts and secured by a mated nut that is tightened by applying torque."

> Screw: "A cylindrical rod incised with one or more helical or advancing spiral threads. . . . A metal pin with incised threads and broad slotted head that can

be driven as a fastener by turning with a screwdriver...." ·

*American Heritage Dictionary of the English Language* 213, 1622 (3d ed.1996), *quoted in Rocknel,* 118 F.Supp.2d at 1241–42.

Bolt: "A rod or heavy pin (as one made of steel) designed to fasten two or more objects (as metal plates) together or to hold one or more objects in place often having a head at one end and a screw thread cut upon the other and being usually secured by a nut or by turning."

Screw: "A cylinder with a helical cut groove on the outer surface or a cone with a conical spiral groove used variously (as to fasten, apply pressure, transmit motion, or make adjustments) especially where a large mechanical advantage and irreversible motion are desired; specifically: a small cylindrical or conical metal screw with a slotted or recessed head used alone or when cylindrical with a nut to unite two objects or to fasten one or more objects usually by being rotated (as with a screwdriver)."

Webster's New International Dictionary 249, 2041 (3d ed.1968).

A comparison of the ANSI Specification with the various dictionary definitions reveals that the general ANSI definitions and primary criteria, which focus on whether the fastener is designed to be torqued by tightening the head or a nut, conform well to the distinctions made in the dictionary definitions. The supplemental criteria of the ANSI specification, while not inconsistent with the dictionary definitions, contain detail that goes beyond the definitions found in both the technical and general dictionaries.

In its briefs to this court and at oral argument, Rocknel proposed its own definition of the term "bolt," which it contends represents the common meaning of the term. Under that definition, a bolt "includes partially threaded fasteners used to hold or fasten objects together, and capable of being torqued by the head or by the nut." That definition, which uses the term "includes" and thus is open-ended, consists of three elements: bolts are (1) partially threaded, (2) used to hold or fasten objects together, and (3) capable of being torqued by the head or by a nut. In contrast, Rocknel argues, "the shanks of screws ... are fully threaded from the point to the head, are sometimes pointed, are often turned with a screwdriver, and are capable of fastening or transmitting motion."

■■■ Rocknel's proposed definition has several defects. First, Rocknel's reliance on the distinction between fully and partially threaded rods is not reflected in any of the dictionary definitions. Rocknel relies for that distinction on the Explanatory Notes to the HTSUS, which were prepared by the World Customs Organization to accompany the international harmonized schedule. The Explanatory Notes, however, do not rely on partial threading as a firm criterion for classifying bolts and screws, but merely state that screws for metal are "generally threaded throughout their length whereas bolts usually have a part of the shank unthreaded." Customs Co-operation Council, *Harmonized Commodity Description and Coding System* § 73.18, Explanatory Note (A) (1988). Furthermore, although the Explanatory Notes may offer guidance in interpreting subheadings in the HTSUS, they are not considered controlling. *See Totes, Inc. v. United States,* 69 F.3d 495, 500 (Fed.Cir. 1995).

The two remaining factors in Rocknel's proposed definition of bolts—that bolts are used to fasten objects together and that they are capable of being torqued by the head or by a nut—are not at all helpful because they fail to provide any useful

distinction between bolts and screws. Both screws and bolts are used to hold or fasten objects together, and all screws are capable of being torqued by the head. Rocknel's observation that screws are "sometimes" pointed and are "often" turned with a screwdriver is also unhelpful, as it does not address the circumstances in which objects that are not pointed and are not turned with a screwdriver may still be considered screws.

Because the dictionary definitions of the terms "bolt" and "screw," such as those quoted above, are not sufficiently precise to distinguish between bolts and screws in all cases, it was reasonable for Customs to adopt the definitions of "bolt" and "screw" in the ANSI Specification, which are consistent with the dictionary definitions but supplement those definitions where needed to draw fine distinctions between the two terms. Standards promulgated by industry groups such as ANSI, ASME, and others are often used to define tariff terms, *see, e.g., Hafele Am. Co. v. United States,* 870 F.Supp. 352, 355 (Ct. Int'l Trade 1994) (using ANSI/ASME Specification B18.2.1); *Wash. Int'l Ins. Co. v. United States,* 803 F.Supp. 420, 422 (Ct. Int'l Trade 1992) (using ASTM standard), *aff'd,* 24 F.3d 224 (Fed.Cir.1994), and as noted above, Customs has applied the ANSI Specification in distinguishing between screws and bolts from a time even before the enactment of the HTSUS.

This is not a case in which there is a conflict between the dictionary meanings and a commercial standard. *See Rohm & Haas Co. v. United States,* 727 F.2d 1095, 1097–98 (Fed.Cir.1984); *Winter-Wolff, Inc. v. United States,* 996 F.Supp. 1258, 1263 (Ct. Int'l Trade 1998). Rather, it involves an authoritative industry source that is generally consistent with the dictionary definitions and has been used to supplement the dictionary definitions with additional necessary precision. *See*

*Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789–90 (Fed.Cir.1988).

Applying the principles of deference set forth in the Supreme Court's decision in *Mead,* we conclude that Customs' construction of the statute has persuasive power and is entitled to deference. Customs' definition is consistent with the dictionary definitions, it is reflected in Customs classification rulings and a Customs publication specifically addressed to the issue, and it reflects an effort by a national standard-making organization to provide a basis for distinguishing the two types of fasteners without departing from the common understanding of the terms. Customs' choice of definitions for the terms is especially reasonable in light of the failure of the party protesting the classification to offer alternative definitions that are more consistent with the common meaning and are useful in making classification decisions. We therefore uphold the judgment of the Court of International Trade sustaining Customs' classification ruling.

*AFFIRMED.*