INTERCONTINENTAL MARBLE CORPORATION, Plaintiff–Appellee,

v.

UNITED STATES, Defendant–Appellant.

No. 03–1555.

United States Court of Appeals, Federal Circuit.

Aug. 25, 2004.

Alexander D. Chinoy, Miller & Chevalier Chartered, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Richard H. Abbey and Joel W. Rogers.

Harry A. Valetk, Attorney, Commercial Litigation Branch, Civil Division, International Trade Field Office, United States Department of Justice, of New York, NY, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, NY. Of counsel on the brief was Chi S. Choy, United States Customs & Border Protection, of New York, NY.

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

GAJARSA, Circuit Judge.

The United States (the "government") appeals from the final decision of the United States Court of International Trade granting summary judgment in favor of Intercontinental Marble ("ICM"), thereby reversing the classification by the United States Bureau of Customs and Border Protection ("Customs") of certain merchandise imported by ICM. *Intercont'l Marble Corp. v. United States*, 264 F.Supp.2d 1306 (Ct. Int'l Trade 2003). Because we agree that Customs has not identified any support for its changed interpretation of the Harmonized Tariff Schedule of the United States ("HTSUS"), we affirm the Court of International Trade's order.

## I. BACKGROUND

ICM is an importer of stone products, including varieties known as "Crema Marfil," "Negro Marquina," "Rojo Alicante," "Emperador Marron," and "Botticino." *Id.* at 1310. There are no issues of disputed fact on appeal, as the parties agree that the merchandise: (1) is stone slab under the definition set forth in Additional Note 1 to Chapter 68 of the Harmonized Tariff Schedule of the United States;[1] (2) is not geological marble, but is instead non-crystalline limestone; and (3) is capable of taking a polish. *Id.* Both parties further agree that the term "marble" is not defined in either the HTSUS or its legislative history. *Id.* at 1311. The single issue to be resolved on appeal is whether Customs properly classified ICM's imports under the HTSUS subheading for "other calcareous stone," or if, as ICM contends, Customs should have classified those items under the subheading for "marble."[2]

The HTSUS provides the following subheadings for stone products:

| | | |
|---|---|---|
| 6802 | Worked monumental or building stone (except slate) and articles thereof, other than goods of heading 6801; mosaic cubes and the like, of natural stone (including slate), whether or not on a backing; artificially colored granules, chippings and powder, of natural stone (including slate): | |
| . . . . | Other: | |
| 6802.91 | Marble, travertine and alabaster: | |
| | Marble: | |
| 6802.91.05 | Slabs | 2.6% |
| 6802.91.15 | Other | 5.1% |
| | Travertine: | |
| 6802.91.20 | Articles of subheading 6802.21.10 that have been dressed or polished, but not further worked | 4.6% |
| 6802.91.25 | Other | 4% |
| 6802.91.30 | Alabaster | 4.8% |
| 6802.92.00 | Other calcareous stone | 5.1% |
| 6802.93.00 | Granite | 3.8% |

1. Additional Note 1 provides:
   For the purposes of heading 6802, the term *"slabs"* embraces flat stone pieces, not over 5.1 cm in thickness, having a facial area of 25.8 cm$^2$ or more, the edges of which have not been beveled, rounded or otherwise processed except such processing as may be needed to facilitate installation as tiling or veneering in building construction.

Chapter 68, HTSUS (2004).

2. "Calcareous" means "Of the nature of (carbonate of) lime"; composed of or containing lime or lime-stone. 2 *Oxford English Dictionary* 774 (2d ed.1998). The parties stipulated to a definition of the term wherein "calcareous stone" was "stone resembling, containing, or composed of calcium carbonate."

Chapter 68, HTSUS (1998).[3] Based on its Informed Compliance Publication, Customs classified ICM's merchandise under subheading 6802.92.00 ("Other calcareous stone"). *See What Every Member of the Trade Community Should Know About: Classification of Marble* (U.S.Customs, Sept. 2001). In this publication, Customs explains:

> Numerous rulings issued by Customs Headquarters have held that geological definitions of stone must be followed under the Harmonized Tariff Schedule (HTSUS). Although polished limestone (or limestone capable of taking a polish) is often called "marble" in the trade, Headquarters has ruled that it is classifiable as other calcareous stone in subheading 6802.92.00, HTSUS, not as marble in subheading 6802.91. Since geological definitions govern the classification of stone under the HTSUS and these two stones are regarded as distinct geological entities, limestone may not be classified as marble.

*Classification of Marble, supra,* at 4. One of the numerous rulings referenced by the publication explains that under the former tariff schedule, the Tariff Schedule of the United States ("TSUS"),

> all stones that polish, whether or not such stone met the technical definition of marble, were classified by Customs as marble. However, under the newly-enacted HTSUS[ ], whose basic provisions are common to the tariffs of all of the nations using the Harmonized Commodity Description and Coding System, it is imperative that the United States, whenever possible, define the various tariff terms in a manner consistent with all nations utilizing the HTSUS[ ]. It is for

this reason that we have settled upon the commonly-accepted geological definition of various stones to determine the proper classification under the HTSUS[ ].

Headquarters Ruling Letter No. 087,014 (June 12, 1990), *available at* 1990 U.S. CUSTOM HQ LEXIS 4791 (hereinafter, "HRL 087,014"); *see also Intercont'l Marble,* 264 F.Supp.2d at 1314 n. 8 (collecting additional rulings). As stone capable of taking a polish, ICM's imports would have been classified as marble under the TSUS. *See Intercont'l Marble,* 264 F.Supp.2d at 1310; HRL 087,014.

The Court of International Trade rejected Customs' classification of ICM's merchandise. Consistent with the concession made by Customs in its publication and rulings, the court concluded that the commercial meaning of marble was broader than its geological definition and that, consequently, "it [was] beyond debate that the commercial meaning of the term . . . include[d] the subject merchandise." *Intercont'l Marble,* 264 F.Supp.2d at 1313 & n. 5 (citing *Classification of Marble, supra,* at 4). Reviewing the plain language of the HTSUS, the explanatory notes, and the change in structure of the schedule between the TSUS and the HTSUS, however, the Court of International Trade found "no indication that Congress intended to change the meaning of the term 'marble' under the HTSUS." *Id.* at 1314; *see also id.* at 1316–17, 1320–21. The court additionally explained that in the absence of an expressed legislative intent, Customs' publication, *Classification of Marble,* was not entitled to any deference. Finding no authority for Customs' narrowing definition, the Court of International Trade deter-

---

**3.** According to the Court of International Trade's opinion, ICM is challenging the classification of merchandise entering between

the years 1995 and 1998. For simplicity of analysis, we refer only to the 1998 HTSUS in our discussion.

mined that marble retained its commercial meaning under the HTSUS. Accordingly, the court granted ICM's summary judgment motion and denied the government's. The government timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II.  DISCUSSION

### A.  *Standard of Review*

■■■■  We review the grant of summary judgment by the Court of International Trade de novo. *Boen Hardwood Flooring, Inc. v. United States,* 357 F.3d 1262, 1264 (Fed.Cir.2004). Summary judgment is appropriate where, as here, there is no issue of material fact regarding the imported merchandise and the disposition of the matter depends entirely on the interpretation of the relevant tariff provision, which we also determine de novo. *Id.* Despite our de novo review of interpretations of tariff provisions, classification decisions by Customs interpreting provisions of the HTSUS may receive some deference under the principles of *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *See Rocknel Fastener, Inc. v. United States,* 267 F.3d 1354, 1357 (Fed. Cir.2001) (citing *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

### B.  *Analysis*

■■■■  Where a tariff term is not defined in either the HTSUS or its legislative history, the term is given its common meaning, which is presumed to be the same as its commercial meaning. *Rocknel Fastener,* 267 F.3d at 1356; *Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1379 (Fed.Cir.1999). "To ascertain the common meaning of a term, a court may consult 'dictionaries, scientific authorities, and other reliable information sources' and 'lexicographic and other materials.' " *Rocknel*

*Fastener,* 267 F.3d at 1356–57 (quoting *C.J. Tower & Sons v. United States,* 69 C.C.P.A. 128, 673 F.2d 1268, 1271 (CCPA 1982)). Furthermore, in the absence of a clear congressional intent to change the statutory meaning of a tariff term, a court may rely on the meaning of that term under the TSUS "as a guide to resolving uncertainties" under the HTSUS. *Anhydrides & Chems. v. United States,* 130 F.3d 1481, 1484 (Fed.Cir.1997). House of Representatives Conference Report No. 100–576 similarly explains that:

> In light of the significant number and nature of changes in nomenclature from the TSUS to the HTS[US], decisions by the Customs Service and the courts interpreting nomenclature under the TSUS are not deemed dispositive in interpreting the HTS[US]. Nevertheless, on a case-by-case basis prior decisions should be considered instructive in interpreting the HTS[US], particularly where the nomenclature previously interpreted in those decisions remains unchanged and no dissimilar interpretation is required by the text of the HTS[US].

H.R. Conf. Rep. No. 100–576, at 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.

■■■  The government opens its brief with a variety of dictionary sources providing definitions of "marble," and asserts that the common meaning of the term reflected by those definitions supports a geological definition of the term. As the Court of International Trade noted, however, while the dictionary definitions cited by the government do demonstrate that marble has a geological definition, those very same sources also acknowledge a broader non-geological meaning. *See The Random House Dictionary of the English Language* 875 (1969) (defining marble as "limestone in a *more or less* crystalline state, and capable of taking a high polish"

(emphasis added)) (cited in Br. for Appellant at 10); 9 *Oxford English Dictionary* 355 (2d ed.1998) (defining marble as "[l]imestone in a crystalline (*or, less strictly, also a granular*) state and capable of taking a polish" (emphasis added)) (electronic version cited in Br. for Appellant at 10). ICM submits additional definitions supporting the Court of International Trade's conclusion (as well as its own position). *See* Paul W. Thrush, U.S. Dep't of the Interior, *A Dictionary of Mining, Mineral and Related Terms* 168 (1968) ("A true marble is a limestone which has been crystallized by heat or pressure and is capable of taking a polish. Commercially, any limestone that is sufficiently hard and coherent to take a good polish is called a marble."); *McGraw Hill Encyclopedia of the Geological Sciences* 331 (2d ed.1987) (defining marble as "[a] term applied commercially to any limestone or dolomite taking polish"). As the foregoing authorities make clear, the common meaning of marble—even as reflected in the government's own sources—is broader than the geological definition that Customs wishes to assign to the term.

The broader definition is also consistent with Customs' treatment of stone products under the TSUS, as acknowledged in Customs' ruling letter and publication. *See* HRL 087,014 ("Under the TSUS, all stones that polish, whether or not such stone met the technical definition of marble, were classified by Customs as marble."); *Classification of Marble, supra,* at 4 ("[P]olished limestone (or limestone capable of taking a polish) is often called 'marble' in the trade."). The government now attempts to overcome Customs' long-standing interpretation by arguing that the organizational changes to the tariff schedule between the TSUS and the HTSUS demonstrate the congressional intent necessary to justify its departure from its prior interpretation. The government also attempts to diminish the significance of Customs' prior interpretation under the TSUS, explaining that the prior interpretation was itself in error and citing several cases decided prior to the enactment of the TSUS that afforded marble its narrow geological definition.

The relevant provisions in the TSUS provided the following:

Jet; and articles of alabaster, of jet, or of alabaster and jet:

| | | |
|---|---|---|
| 513.91 | Jet, not manufactured | Free |
| 513.94 | Other, not specifically provided for | 5.3% |

Limestone and articles of limestone:
    Limestone suitable for use as monumental, paving, or building stone:

| | | |
|---|---|---|
| 514.21 | Not hewn, not sawed, not dressed, not polished, and not otherwise manufactured | Free |
| 514.24 | Hewn, sawed, dressed, polished, or otherwise manufactured | 5.3% |

. . . .

Marble, breccia, and onyx, and articles of one or more of these substances:
    . . . .
    Slabs:

| | | |
|---|---|---|
| 514.61 | Not rubbed and not polished in whole or in part | 2.1% |
| 514.65 | Rubbed or polished in whole or in part | 2.8% |

    . . . .

. . . .

Travertine and articles of travertine
    . . . .

514.24　　　Travertine, hewn, sawed, dressed, polished, or otherwise manufactured, and suitable for use as monumental, paving, or building stone　　6%

TSUS, Schedule 5, Part 1, Subpart C (1987). Under the TSUS, marble, travertine, alabaster, and "Limestone and articles of limestone" were all parallel subheadings of subpart C, entitled "Stone and Stone Products." Following the reorganization in the HTSUS, marble, travertine, and alabaster are now grouped together under a single subheading that is parallel with subheadings for "Other calcareous stone," granite, and "Other stone." [4] *See* Chapter 68, subheading 6802.91, HTSUS (1998).

The government argues that this change in grouping demonstrates a legislative intent to geologically define marble for two reasons. The first is that the common theme in marble's new grouping (with travertine, alabaster, and other calcareous stone) is the similar geological composition of the stones. This focus on geological composition is continued from subheading 2515, the government continues, which identifies materials by their specific gravities.[5] The omission of a subheading for limestone and the appearance of the new subheading for calcareous stone, according to the government, is further evidence of Congress's intent to replace commercial definitions with geological ones. The government's second argument is that interpreting marble other than according to its geological definition renders the "travertine" subheading superfluous.

We disagree with the inference the government draws from the reorganization of the HTSUS. Even accepting the government's argument that the subheading for marble, travertine, and alabaster is based on geological similarities between the subject merchandise, this does not amount to the "clear evidence of legislative intent" required to overcome the presumption that the terms in the tariff schedules carry their commercial meanings. *Lonza, Inc. v. United States*, 46 F.3d 1098, 1106–07 (Fed.Cir.1995). To the contrary, the commercial definition of marble fits comfortably with the geological theme identified by the government, and the government has not asserted otherwise regarding the commercial definitions for travertine or alabaster. The sole distinction between the commercial and geological definitions for marble is the degree of crystallinity in the stone. Both definitions describe marble as consisting of a limestone base, which is the theme the government seizes upon for its arguments. *See, e.g.,* 9 *Oxford English Dictionary* 355 (2d ed.1998) (explaining that marble is limestone capable of taking a polish but may be crystalline or granular). The government's geological explanation for the changes to the organization of the HTSUS, however, does not require a departure from the presumed commercial meanings of the terms when the commercial meanings provide an equally sensible explanation. Rather, the nature of a presumption requires us to adhere to the commercial meanings here,

4. All of these subheadings are part of heading 6802, which is entitled "Worked monumental or building stone (except slate) and articles thereof, other than goods of heading 6801; mosaic cubes and the like, of natural stone (including slate), whether or not on a backing; artificially colored granules, chippings and powder, of natural stone (including slate)."

5. Subheading 2515 covers "[m]arble, travertine and other calcareous monumental or building stone of an apparent specific gravity of 2.5 or more, and alabaster" that does not qualify as "worked monumental or building stone" under subheading 6802.

where the competing interpretations amount to a draw.

Attempting to undermine the sensibility of the commercial definition, the government argues that the subheading for travertine is superfluous if marble is not given its geological definition. We disagree. The government asserts, and the Court of International Trade found, that travertine is typically known in trade as marble. *Intercont'l Marble*, 264 F.Supp.2d at 1319. If Congress intended for marble to carry its commercial definition, the government explains, the marble subheading would subsume travertine and Congress would not have needed to create a separate travertine subheading. While, again, the government poses a possible explanation for the organization, equally plausible is the possibility that Congress simply wished to impose a duty on travertine different from that which it imposed on marble. *See* HTSUS, General Rules of Interpretation 3(a) (explaining that "the heading which provides the most specific description shall be preferred to headings providing a more general description"). Thus, although the government has conceived of an alternate theory, it is not one that undermines the presumption in favor of the commercial meaning of tariff terms. *See Lonza*, 46 F.3d at 1106–07.

■ In light of the foregoing discussion, the government's argument that Customs' interpretation of marble under the TSUS was erroneous may be quickly dispatched. Faced with its longstanding use of the commercial meaning of "marble," the government explains that Customs' prior interpretation under the TSUS was actually incorrect. By adopting the geological definition under the HTSUS, the government continues, Customs has corrected the error. According to the government, the proper definition is reflected in cases decided prior to the enactment of the TSUS

such as *Bockmann v. United States*, 158 F. 807, 808 (2d Cir.1908), and *United States v. Jackson*, 1 Ct. Cust.App. 27 (1910). In response we need only quote the Court of International Trade, which responded ably to the government's argument:

> Given that Customs's interpretation of the term "marble" under the TSUS was at odds with prior judicial constructions of that term, had it been Congress's intent to fix the meaning of the term "marble" to encompass only stone meeting the geological meaning of that term it would have done so unambiguously.

*Intercont'l Marble*, 264 F.Supp.2d at 1319 n. 16. This principle has long been a part our jurisprudence: "The common meaning of a tariff term, once established, remains controlling until a subsequent change in statute compels a revised construction of the term's meaning." *Lonza*, 46 F.3d at 1106 (citing *United States v. Great Pac. Co.*, 23 C.C.P.A. 319, 327 (1936)). Having concluded that no change to the definition of marble resulted from the enactment of the HTSUS, we similarly conclude that Congress preferred the interpretation of the term under the TSUS to that articulated in *Bockmann* and *Jackson*.

The government next challenges the Court of International Trade's reliance on the Explanatory Notes of the World Customs Organization (the "ENs"). Given our conclusion that neither the text nor the structure of the HTSUS compels deviation from the commercial definition of marble, this argument is ineffectual. We do note, however, that the Court of International Trade clearly explained that it was relying on the ENs for guidance purposes only. *See Intercont'l Marble*, 264 F.Supp.2d at 1320 (citing *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994)). Furthermore, as the Court of International Trade pointed out, the definition of "marble" provided in the ENs favors the com-

mercial meaning of the term. The ENs explain that "[m]arble is a hard calcareous stone, homogeneous and fine-grained, *often crystalline* and either opaque or translucent." World Customs Organization, *Harmonized Commodity Description and Coding System, Explanatory Notes* 218 (3d ed.2002) (emphasis added). In other words, crystallinity—a requirement under the geological definition of marble—is not required under the definition provided in the ENs. Marble that is "often," but sometimes not, crystalline, is not geological marble under Customs' definition.

Finally, although additional reasons may be unnecessary, our decision in *Anhydrides & Chemicals* counsels against adopting the definition of marble advanced by Customs. In *Anhydrides & Chemicals,* the court explained that an "interpretation of the HTSUS classification in a way that would markedly increase the duty [on an article], although there was no prior indication that the rate was intended to undergo a major increase, is viewed with caution." 130 F.3d at 1484. The court's statement was premised in part on President Ronald Reagan's request for the International Trade Commission to investigate the impact of adopting the Harmonized Tariff System, to whom he explained: "In converting the tariff schedules the Commission should avoid, to the extent practicable and consonant with sound nomenclature principles, changes in rates of duty on individual products." Institution of Investigation for the Conversion of the Tariff Schedules of the United States into the Nomenclature Structure of the Harmonized System, 46 Fed.Reg. 47,897 (Sept. 30, 1981) (reprinting President Reagan's request in full).

As the Court of International Trade noted, adopting Customs' interpretation would nearly double the tariff on merchandise excluded from the marble subheading as a result of Customs' new definition. *Intercont'l Marble,* 264 F.Supp.2d at 1319 n. 16. The duty on marble slabs under the TSUS was either 2.1% or 2.8% depending on whether the slabs were polished. TSUS, Schedule 5, Part 1, subheadings 514.61, 514.65. Similarly, the duty on marble slabs under the HTSUS is 2.6%. HTSUS, Chapter 68, subheading 6802.91.05. By comparison, the duty on articles falling within the "other calcareous stone" subheading is 5.1%. *Id.* subheading 6802.92.00. Had Congress intended to effect such a significant change in duty, we would expect a more pronounced expression of its intent to appear in the HTSUS. In the absence of such an expression, there has been an insufficient showing that Congress intended to deviate from the definition applied under the TSUS.

## III. CONCLUSION

In sum, we agree with the Court of International Trade that Customs has identified no authority to narrow the definition of "marble" from the commercial meaning conceded by Customs to include "all stones that polish" to a geological definition requiring crystallization. We therefore adhere to our presumption that marble is defined according to its common, commercial meaning, as it was prior to the enactment of the HTSUS. Accordingly, the decision of the Court of International Trade is

*AFFIRMED.*

## IV. COSTS

Costs to appellee.