**Slip Op. 01-151**

**UNITED STATES COURT OF INTERNATIONAL TRADE**


**BEFORE:  RICHARD K. EATON, JUDGE**

———————————————————————
                          :

**FOUR SEASONS PRODUCE, INC.,**    :

                           :

        Plaintiff,          :

                           :

        v.                :     **Court No. 99-03-00142**

                           :

**UNITED STATES OF AMERICA,**    :

                           :

        Defendant.     :

———————————————————————:


       Plaintiff importer challenged United States Customs Services' ("Customs") valuation of its fresh Mexican summer asparagus exported to United States on consignment and, therefore, without an actual transaction value.  Plaintiff questioned Customs' construction of phrase "at or about the time" found in section 402 of the Trade Act of 1930, <u>as amended</u>, 19 U.S.C. § 1401a (1994), when used to assign a value to Plaintiff's merchandise.  The United States Court of International Trade, Eaton, J., found Customs' construction of phrase merited respect under holding of <u>Skidmore v. Swift & Co.</u> and, thus, valuation was proper.

[Plaintiff's motion for summary judgment denied; Defendant's cross-motion for summary judgment granted; action dismissed.]


                                   Decided:  December 20, 2001


       *Givens and Associates, PLLC*, (*Robin T. Givens*), for Plaintiff.

       *Robert D. McCallum, Jr*., Assistant Attorney General of the United States; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Amy M. Rubin*); Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service (*Yelena Slepak*), of Counsel, for Defendant.


**OPINION**

       **EATON, JUDGE:**  Plaintiff, Four Seasons Produce, Inc. ("Four Seasons"), brought this

action to contest the appraisement and valuation[1] of its fresh Mexican summer asparagus

("Plaintiff's merchandise") by the United States Customs Service ("Customs"). Plaintiff

challenges Customs' construction of the phrase "at or about the time" found in section 402 of the

Trade Act of 1930, as amended, 19 U.S.C. § 1401a (1994) ("section 1401a" or "Act"), as it

relates to the method Customs used to value Plaintiff's merchandise. The matter is before the

court on cross-motions for summary judgment. The court has jurisdiction pursuant to 28 U.S.C.

§ 1581(a) (1994).


## BACKGROUND

Plaintiff's merchandise was imported through the Port of Hidalgo, Texas, in 1992 and

1993. Because the merchandise was shipped on consignment, it had no actual transaction value

(or sales price) from which Customs could calculate a duty. Customs therefore sought to assign a

value to Plaintiff's merchandise by giving it the same transaction value as that "of identical

merchandise, or of similar merchandise, . . . exported to the United States at or about the time"

Plaintiff's merchandise was exported, as provided in section 1401a(c)(1)(B). In doing so,

Customs employed the interpretive principles set out in Customs Headquarters' Decision Letter

HQ 546217 of April 8, 1998 ("Decision Letter"),[2] to give meaning to the phrase "at or about the

---

[1]      "If imported merchandise is dutiable, in whole or in part, at an ad valorem rate . . .
the dutiable value of that merchandise must be ascertained to permit application of the pertinent
duty rate. The process by which Customs determines dutiable value is called 'appraisement.'" 1
United States Customs and Int'l Trade Guide § 9.01 (Peter B. Feller ed., 2nd ed. 2001) (citing
Customs Valuation, Report of U.S. Tariff Commission to Senate Finance Committee (Mar. 14,
1973)).

[2]      This letter is appended as an exhibit to Defendant's brief in support of its cross-
motion for summary judgment. (See Def.'s Mem. Supp. Cross-Mot. S. J., Ex. A.)

time." (Pl.'s Mem. Supp. Mot. S. J., app. A ¶ 4 ("Stipulated Facts").)[3]  Plaintiff's merchandise

was entered "under subheading 0709.20.90, Harmonized Tariff Schedule of the United States

("HTSUS") as 'Other vegetables, fresh or chilled:  Asparagus:  Other' . . ." that provided for a

duty of 25% ad valorem.  (Def.'s Mem. Supp. Cross-Mot. S. J. at 1); see HTSUS 0709.20.90

(1992), (1993).


    Plaintiff argues that its merchandise was improperly valued because Customs'

interpretation of the phrase "at or about the time" did not reflect the legislative intent that

Customs consider valuations of all merchandise exported to the United States "about" the time of

the exportation of Plaintiff's merchandise.  The United States ("Government"), on behalf of

Customs, argues that Customs' interpretation of this phrase—preferring valuations of

merchandise exported to the United States closer to the date Plaintiff's merchandise was

exported over those further away—should be accorded deference under the holding in Chevron

U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  For the reasons set forth

below, the court finds that, while Customs' interpretation of the phrase "at or about the time," as

used in the Act, does not merit Chevron deference, it does merit respect under the holding in

Skidmore v. Swift & Co., 323 U.S. 134 (1944), and, therefore, Customs properly appraised and

valued Plaintiff's merchandise.

---

    [3]    Plaintiff filed a number of protests relating to fresh Mexican summer asparagus.
Although there is some confusion as to whether the Decision Letter relates to the protest that is
the subject of this action (compare Pl.'s Mem. Supp. Mot. S. J. at 2 n.1, with Def.'s Mem. Supp.
Cross-Mot. S. J. at 2), the parties agree that the reasoning in the Decision Letter as to the
meaning of the phrase "at or about the time" is the same as that used in the appraisement and
valuation of Plaintiff's merchandise.  (See Pl.'s Mem. Supp. S. J. at 2; Def.'s Mem. Supp. Cross-
Mot. S. J. at 2.)

**STANDARD OF REVIEW**

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Govesan Am. Corp. v. United States, 25 CIT __, Slip Op. 01-119, 3 (Sept. 28, 2001); Rollerblade, Inc. v. United States, 24 CIT __, 116 F. Supp. 2d 1247, 1250 (2000). As the parties have entered into a stipulation demonstrating that there is no genuine issue as to any material fact, summary judgment is appropriate. See Trans-Atlantic Co. v. United States, 74 Cust. Ct. 134 (1975).

**DISCUSSION**

Where, as here, merchandise is entered on consignment and, thus, has no price actually paid or payable at the time of export and, hence, no readily ascertainable actual value, the Act provides for a value to be assigned.[4] Pursuant to 19 U.S.C. § 1500 (1994), Customs fixes the final appraisement of merchandise under 19 U.S.C. § 1401a "by ascertaining or estimating the value thereof . . . by all reasonable ways and means . . . ." 19 U.S.C. §1500(a). Subsection 1401a(c) provides for assigning, to consigned merchandise, a value equal to the actual price paid or payable for identical or similar merchandise:

---

[4] While Plaintiff's merchandise was imported in 1992–93, and Customs' final valuation occurred in 1998, the applicable statutes and regulations remained identical. Compare 19 U.S.C. §§ 1401a, 1500 (1988), with 19 U.S.C. §§ 1401a, 1500 (1994); 19 C.F.R. §§ 152.101(b), 152.104, 174 (1992), (1993), with 19 C.F.R. §§ 152.101(b), 152.104, 174 (1998).

> (1) The transaction value of identical merchandise, or of similar merchandise, is the transaction value . . . of imported merchandise that is . . .
>
>> (B) exported to the United States at or about the time that the merchandise being appraised is exported to the United States.
>
> (2) . . . . If in applying this paragraph with respect to any imported merchandise, two or more transaction values . . . are determined, such imported merchandise shall be appraised on the basis of the lower or lowest of such values.

19 U.S.C. § 1401a(c).[5] In an effort to provide a method for implementing this subsection,

Customs issued the Decision Letter, which purports to interpret the phrase "at or about the time"

as follows:

> The terms "at" or "about," included in the "at or about the time of exportation" language . . . are applied in a hierarchial[6] [sic] fashion, i.e., "at" then "about." In the case of perishable produce such as asparagus, "about" will be construed as meaning . . . seven calendar days . . . before or after the date of exportation of the . . . merchandise being appraised . . . . Transaction values for produce that has been exported on the exact date as the . . . produce being appraised first are considered. If no transaction value is available for produce exported on the exact date as the . . . produce being appraised, transaction values for produce exported on the date closest to the date of export . . . followed by the next closest date . . . and so forth next are considered.

(Decision Letter at 4.) The Decision Letter also provides that "[o]nce a transaction value is

found, only the value or values on the date closest (before and after) to the date of exportation

---

[5] Customs' regulations provide for sequential application of these values. If possible, merchandise is first valued by the transaction value of identical merchandise and, then, if that value cannot be determined, by the transaction value of similar merchandise. See generally 19 C.F.R. § 152.101(b) (1998).

[6] The words "hierarchical" and "hierarchal" are used interchangeably by Customs and Plaintiff.

will be considered . . . ." (Id.)


In accordance with the Decision Letter, and as stipulated by the parties, in valuing

Plaintiff's merchandise Customs construed the phrase "at or about the time" using the following

interpretive guidelines:

> (1) "at" means on the date of exportation of the merchandise being
> appraised;
>
> (2) "about" means seven days before or after that day; and,
>
> (3) the phrase "at or about the time" is to be read hierarchically, so
> that "at" values are preferred to "about" values, such that values for
> days closer to the date of exportation are preferred, and it is only
> among values of the same day or days before and after the date of
> exportation equidistant in time to the date of exportation that the
> lower or lowest value is utilized.

(Stipulated Facts ¶ 4.) Thus, Customs valued Plaintiff's merchandise by using either: (1) the

actual transaction value of identical or similar merchandise on the date of exportation to the

United States of Plaintiff's merchandise; or, (2) if no exportation to the United States of identical

or similar merchandise took place on that date, the actual transaction value of identical or similar

merchandise exported to the United States on the date (or dates)[7] closest to the date Plaintiff's

merchandise was exported. Once a transaction value was found, Customs looked no further and

assigned that value to Plaintiff's merchandise. Had it found more than one transaction value on

such date (or dates), Customs would have applied the lower or lowest of those values to

Plaintiff's merchandise. (Id. ¶ 6.) Plaintiff does not object to Customs' use of the fifteen day

---

[7]       Exportation to the United States could occur on dates an equal number of days
both a week before and a week after exportation of Plaintiff's merchandise for a total period of
up to 15 days. (See Stipulated Facts ¶ 5.)

period for examining transaction values.  (Pl.'s Mem. Opp'n to Def.'s Cross-Mot. S. J. at 8.)

Plaintiff does, however, object to Customs' interpretation of section 1401a(c) as to which

transaction values Customs selects during that period:

> It is Plaintiff's position that the phrase "at or about [the time of exportation]" should be interpreted so as to give equal value to the words "at" and "about" and that Customs' interpretation which gives a hierarchal preference to the word "at" is contrary to legislative intent.  Thus, in determining the "lower or lowest" values applicable to the involved asparagus . . . Customs must consider values of . . . merchandise exported throughout the entire fifteen day period around and on the date of exportation [of Plaintiff's merchandise]

(Pl.'s Mem. Supp. Mot. S. J. at 2) thereby giving Plaintiff the benefit of the lowest transaction

value found during that entire period.

Plaintiff contends that its interpretation of "at or about the time" comports with legislative

intent.  Plaintiff maintains that the "statute plainly contemplates consideration of merchandise

values over a range of dates near the time of exportation because it speaks in terms of 'lower or

lowest' value 'at or about' the time of exportation." (Pl.'s Mem. Supp. Mot. S. J. at 3.)  Plaintiff

relies on the "lower or lowest" language as evidencing "Congressional intent . . . that importers

get the benefit of the lowest comparison transaction value" found during the prescribed period.

(Pl.'s Mem. Opp'n to Def.'s Cross-Mot. S. J. at 2.)[8]  For Plaintiff, "at or about" is a "seemingly

_____

[8]      Customs' interpretation of the phrase "lower or lowest"—as it relates to perishable merchandise—comports with the statute.  Specifically, Customs' interprets the phrase "lower or lowest" to mean that where it is presented with more than one transaction value on the date (or dates) closest to the date of exportation, it chooses the "lower or lowest" transaction value from among them.  (See Decision Letter at 4 ("[I]n selecting a transaction value of identical or similar merchandise in accordance with [19 U.S.C. § 1401a(c)], it would be appropriate to consider transaction values for produce that has been exported 'at' the same time

disjunctive phrase" that does not permit Customs to prefer the value of merchandise exported to the United States on the same date as Plaintiff's merchandise to the value of merchandise exported on the day before or the day after. (Pl.'s Mem. Supp. Mot. S. J. at 4.) Essentially, Plaintiff would have the court read "at or about" to mean "at and about." The court declines to do so.

There is no indication that Congress intended "or" to be read as "and."[9] See generally Statements of Administrative Action accompanying Trade Agreements Act of 1979, at 441–64, reprinted in 1979 U.S.C.C.A.N. 665, 704–25. As the Government points out, while "[j]udicial decisions can be found in which 'or' . . . [has] been interpreted in a manner other than common grammatical rules would suggest . . . such interpretations are not the norm and general purpose dictionaries, as well as numerous other judicial decisions define and employ 'or' as a disjunctive . . . ." (Def.'s Mem. Supp. Cross-Mot. S. J. at 12); see, e.g., United States v. Best Foods, Inc., 47 C.C.P.A. 163, 167 (1960) (citing Doughton Seed Co. v. United States, 24 C.C.P.A. 258 (1936) and giving "or" its plain meaning where, in the context of the statute at issue, a disjunctive construction neither "produce[d] an anomaly [nor was] contrary to the intent

---

as [Plaintiff's merchandise] . . . . If no transaction value is available for produce exported on the exact date as . . . [Plaintiff's merchandise], it would be appropriate to consider the transaction values for produce exported on the date closest to the date of export . . . . In either case, if several transaction values are provided for produce on the exact or closest date of exportation, the lowest would be utilized.").) Thus, exporters receive the most advantageous transaction value from those on the day (or dates) selected, although that value may not be the "lower or lowest" value over the entire fifteen day period.

[9]        "Ordinarily, 'terms connected by a disjunctive [are] given separate meanings, unless the context dictates otherwise.'" Holly Farms Corp. v. Nat'l Labor Relations Bd., 517 U.S. 392, 413 (1996) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)).

of Congress"). Thus, the court concludes that the phrase "at or about" is not ambiguous and that Congress intended it be read as having its plain meaning such that "at" values are preferred to "about" values. Therefore, Congress intended Customs to value merchandise, which does not have a transaction value at the time of exportation to the United States, by using values of identical or similar merchandise exported to the United States on the date the appraised merchandise is exported, without referring to a longer period of values "about" the date of export of such merchandise.

While it is clear that Congress intended a hierarchical distinction as between "at" values and "about" values, it is less clear that Congress intended that a hierarchical distinction be applied to exportation dates solely "about" the time Plaintiff's merchandise was exported. Thus, the following question is posed: in the event that no identical or similar merchandise with an actual value was exported to the United States on the same day Plaintiff's merchandise was exported, should Customs have looked to all such merchandise exported to the United States during the fifteen day period, or only to merchandise exported on the date closest to the date of exportation of Plaintiff's merchandise? The word "about" is not sufficiently precise to answer this question by itself. Therefore, the language of the Act is ambiguous on this point. To resolve this ambiguity, the Government urges that Customs' interpretation found in the Decision Letter be accorded deference under the United States Supreme Court's holding in Chevron. (Def.'s Mem. Supp. Mot. Cross-Mot. S. J. at 5.) This the court declines to do. However, because Customs' interpretation of the phrase "at or about the time" is persuasive the court finds that it merits respect under Skidmore.

### A.      Chevron Deference

The Supreme Court has held that where an agency puts forth an interpretation of a statute

that is "silent or ambiguous with respect to the specific issue, the question for the court is

whether the agency's answer is based on a permissible construction of the statute." Chevron, 467

U.S. at 843; see also Christensen v. Harris County, 529 U.S. 576, 586–87 (2000) (citing

Chevron, 467 U.S. at 842–43) ("In Chevron, we held that a court must give effect to an agency's

regulation containing a reasonable interpretation of an ambiguous statute."). Following its initial

enunciation of the Chevron doctrine, the Supreme Court has spoken several times on the subject

of the proper measure of deference to be afforded administrative agency decisions. See, e.g.,

United States v. Haggar Apparel Co., 526 U.S. 380 (1999); Christensen, 529 U.S. at 587. In

particular, in the recent case of United States v. Mead Corp., 121 S. Ct. 2164 (2001), the

Supreme Court held that a Customs classification ruling is not entitled to Chevron deference.

See Mead, 121 S. Ct. at 2175. The Court explained that "administrative implementation of a

particular statutory provision qualifies for Chevron deference when it appears that Congress

delegated authority to the agency generally to make rules carrying the force of law, and that the

agency interpretation claiming deference was promulgated in the exercise of that authority."

Mead, 121 S. Ct. at 2171. The Court then held that classification rulings are not entitled to

Chevron deference because they are not issued in a way so as to carry the force of law and, thus,

"are best treated like 'interpretations contained in policy statements, agency materials, and

enforcement guidelines.'" Id. (citing Christensen, 529 U.S. at 587).[10]

---

[10]      In support of its position that the Decision Letter should be entitled Chevron deference, the Government cites Generra Sportswear Co. v. United States, 905 F.2d 377 (Fed. Cir. 1990). (See Def.'s Mem. Supp. Cross-Mot. S. J. at 5; Def.'s Reply to Pl.'s Opp'n to Def.'s

Here the Decision Letter exhibits the characteristics of the classification ruling that was the subject of Mead. As with classification rulings, Congress has explicitly delegated authority to the Secretary of the Treasury to make rules, respecting valuation, carrying the force of law. See 19 U.S.C. §§ 1500(a), 1502(a) (1994), 1624 (1994). In turn, "[t]he Secretary [of the Treasury] . . . has delegated to the Commissioner of Customs the authority to issue generally applicable regulations, subject to the Secretary's approval." Haggar, 526 U.S. at 387–88 (citing Treasury Dept. Order No. 165, T.D. 53160 (Dec. 15, 1952)). However, while Customs possesses the necessary authority to make rules carrying the force of law regarding valuation, it is apparent that it did not do so through the Decision Letter.

First, there is no indication that the Decision Letter was subject to a "relatively formal administrative procedure." Mead, 121 S. Ct. at 2172 ("It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." (citations omitted)). While the Supreme Court in Mead cautioned that the lack of notice-and-comment rulemaking or formal adjudication does not preclude the application of Chevron deference, see United States v. Mead, 121 S. Ct. at 2173, formality is a strong indicator of whether Chevron deference is required. See Christensen, 529

Cross-Mot. S. J. at 4, 5.) Since the decision in Generra, however, the Supreme Court has examined the types of issues addressed therein. See, e.g., Haggar, 526 U.S. 380, Christensen, 529 U.S. 576, Mead 121 S. Ct. 2164; see also Luigi Bormioli Corp. v. United States, 24 CIT __, __, Slip Op. 00-134, 10 (Oct. 19, 2000) ("Because the court concludes that in Haggar and Christensen the Supreme Court has refined the rule of Chevron, it also concludes that Generra no longer requires deference to every Customs policy which is not reduced to a regulation, if indeed it ever did so.").

U.S. at 587 ("[W]e confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant <u>Chevron</u>-style deference.") Here, the Decision Letter was not subject to any formal administrative procedures. While a meeting was held on September 3, 1996, between Plaintiff's counsel and Customs officials during which it appears Plaintiff asserted its arguments as to the interpretation of the Act (<u>see</u> Decision Letter at 1), such a meeting, without more, falls short of the procedural formalism needed for <u>Chevron</u> deference. <u>See</u> <u>Mead</u>, 121 S. Ct. at 2173 ("[T]he overwhelming number of our cases applying <u>Chevron</u> deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication.").

Second, as with the classification ruling that was examined in <u>Mead</u>, the Decision Letter does not bind third parties. <u>See</u> 19 C.F.R. § 152.101(d); <u>cf.</u> <u>Mead</u>, 121 S. Ct. at 2174 (stating that the "treatment [of classification rulings] by the agency makes it clear that a letter's binding character as a ruling stops short of third parties."). The Decision Letter is from the Acting Director of Customs Headquarters' International Trade Compliance Division to the Port Director in Laredo, Texas, regarding Plaintiff's "Application for Further Review of Protest No. 2304-95-100183." As such, it applies only to Plaintiff's entries.

Finally, the interpretation contained in the Decision Letter cannot claim precedential value. As with a classifications rulings, Congress has provided for "independent review" of

valuation rulings. Mead, 121 S. Ct. at 2174 ("[A]ny precedential claim of a classification ruling is counterbalanced by the provision for independent review of Customs classifications by the CIT. . . ; the scheme for CIT review includes a provision that treats classification rulings on par with the Secretary's rulings on 'valuation . . . .'" (citation omitted, emphasis added)).

Therefore, for the foregoing reasons the Decision Letter was not issued with the force of law and the court declines to afford it Chevron deference.

### B.      Skidmore Respect

While Mead held that Customs classifications rulings are not entitled to Chevron deference, it also held that they are entitled to a degree of respect proportional to their "power to persuade." Mead, 121 S. Ct. at 2172 (quoting Skidmore, 323 U.S. at 140); see also id. at 2175 (citing Skidmore at 139–40) ("To agree with the Court of Appeals that Customs ruling letters do not fall within Chevron is not, however, to place them outside the pale of any deference whatever. Chevron did nothing to eliminate Skidmore's holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency . . . and given the value of uniformity in its administrative and judicial understandings of what a national law requires . . . ."). The Supreme Court has described Skidmore respect:

> [T]he rulings, interpretations and opinions of [an administrative agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.

Skidmore, 323 U.S. at 140.  Thus,

> The weight of [an administrative] judgment in a particular case
> will depend upon the thoroughness evident in its consideration, the
> validity of its reasoning, its consistency with earlier and later
> pronouncements, and all those factors which give it power to
> persuade, if lacking power to control.

Id.  These factors were restated in Mead:

> The fair measure of deference to an agency administering its own
> statute has been understood to vary with the circumstances, and
> courts have looked to the degree of the agency's care, its
> consistency, formality, and relative expertness, and to the
> persuasiveness of the agency's position.

Mead, 121 S. Ct. at 2171 (citing Skidmore, 323 U.S. at 139–40); see also Heartland By-Products,

Inc. v. United States, 264 F.3d 1126, 1136 (Fed. Cir. 2001) (declining to disturb Customs'

interpretation of a tariff classification term in the context of a revocation ruling letter because of

"the deference [Customs' interpretation] is due under Mead and Skidmore.").  Therefore, where

Customs has issued a ruling letter, "[s]uch a ruling may surely claim the merit of its writer's

thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of

weight."  Id. at 2176.  Here, the court must determine whether the reasoning behind Customs'

interpretation of the statute—preferring "about" values closer in time to the exportation of

Plaintiff's merchandise over other "about" values—merits respect under Skidmore.  The court

finds that it does.


First, Customs is in the business of both classifying and valuing merchandise.  As with

the classification of merchandise, Customs can be said to possess the kind of "experience and

informed judgment to which courts and litigants may properly resort for guidance," Skidmore v.

Swift & Co., 323 U.S. at 140, and "can bring the benefit of specialized experience to bear on the

subtle question[] of" valuation. Mead, 121 S. Ct. at 2175.


Second, based on this experience and informed judgment, the Decision Letter contains a

thorough and carefully reasoned analysis of the meaning of "at or about the time" as it applies to

the valuation of Plaintiff's merchandise. See Rocknel Fastener, Inc. v. United States, 267 F.3d

1354, 1357 (Fed. Cir. 2001) (holding Skidmore deference is appropriate where Customs'

classification decision revealed Customs' thorough analysis).[11]  In arriving at its decision to

consider the dates closest to the date of exportation, Customs considered that "in the case of

perishable produce, such as asparagus, prices may fluctuate seasonally, weekly, or even daily."

(See Decision Letter at 3; Stipulated Facts ¶ 13.)  Thus, Customs concluded that "at or about the

time of exportation" "should cover a period of time as close to the date of exportation as

possible."  (See Decision Letter at 3.)  Preferring the value of merchandise exported to the United

---

[11]      In Rocknel, the Federal Circuit reviewed Customs' classification of certain
fasteners under HTSUS 7318.15.80.  At issue were the definitions of and distinctions between
the tariff terms "bolt" and "screw."  The court concluded that although plaintiff's definition was
not unreasonable, Customs' decision merited Skidmore respect, adding that "Customs' choice of
definitions for the terms is especially reasonable in light of the failure of the party protesting the
classification to offer alternative definitions that are more consistent with the common meaning
and are useful in making classification decisions." Rocknel, 267 F.3d at 1361 (emphasis added).
Although Rocknel was a Customs classification case, the Federal Circuit's reasoning would seem
to extend to valuation decisions as well.  For, while "common meaning" is a term of art in the
classification of imported goods, the theory is the same.  Here, while Plaintiff has offered a not
unreasonable interpretation of the phrase "at or about," it cannot be said that its interpretation is
more consistent with the common meaning of the phrase than that offered by Customs.  Thus,
while either definition of the phrase "at or about" could plausibly be applied to the facts
presented, as the definition urged by Plaintiff is not more consistent with the "common meaning"
of the phrase than that adopted by Customs, Customs' meaning is to be favored. Id.

States closest to the date of exportation of Plaintiff's merchandise is a reasonable way to accommodate rapid fluctuation in prices.

Third, Customs' interpretation of the valuation statute was rendered by the Acting Director of Customs Headquarters' International Trade Compliance Division. (See id. at 5.) The relative rank of the Customs official preparing the Decision Letter suggests that the Decision Letter was the subject of serious consideration, thus enhancing its "power to persuade." Mead, 121 S. Ct. at 2176 (quoting Skidmore, 323 U.S. at 140); see also 19 C.F.R. § 174.1 (1998) (stating applications for further review are decided by "customs officers on a level higher than the district").

Finally, Customs appears to have given serious consideration to the controversy and to Plaintiff's contentions. On September 3, 1996, Customs officials met with Plaintiff's counsel. (See Decision Letter at 1.) From the Decision Letter it is apparent that Plaintiff was given an opportunity to make its arguments. Further, Customs presented a detailed analysis of those arguments and the reasons for their rejection, as well as an explanation of its own analysis. (See id. at 1–5.)

In light of Customs' specialized experience in valuing exported merchandise, the thoroughness of Customs' reasoning in interpreting the phrase "at or about the time," the rank of the Customs officer who issued the Decision Letter, and Customs' serious consideration of Plaintiff's position as to the meaning of the phrase "at or about the time," the court finds that

Customs' interpretation, as it applies to the valuation of Plaintiff's merchandise, is persuasive and, therefore, entitled to respect under the holding of <u>Skidmore v. Swift & Co.</u> and, thus, Customs properly valued Plaintiff's merchandise.

**CONCLUSION**

Because the court finds that Customs properly valued Plaintiff's merchandise, it denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

_____
Richard K. Eaton

Dated: December 20, 2001
      New York, New York

**ERRATUM**

Four Seasons Produce, Inc. v. United States of America, Court No. 99-03-00142, Slip Op. 01-151, dated December 20, 2001.

      In the appearance for *Givens and Associates, PLLC*, on page one, replace the name "Robin" with the name "Robert."

December 21, 2001.