Slip Op. 07-67

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
ROCKWELL AUTOMATION, INC.       :
f/k/a ROCKWELL AUTOMATION/      :
ALLEN-BRADLEY CO., LLC,         :
                                :
              Plaintiff,        :
                                :
         v.                     : Before: Richard K. Eaton, Judge
                                :
UNITED STATES,                  : Court No. 03-00007
                                :
              Defendant.        :
_____:
```

OPINION AND ORDER

[Plaintiff's motion for summary judgment granted, in part; Defendant's cross-motion for summary judgment denied.]

Dated: May 7, 2007

*Neville Peterson LLP* (*John M. Peterson* and *Curtis W. Knauss*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Bruce N. Stratvert*), for defendant.

Eaton, Judge: At issue is the proper classification of merchandise described by plaintiff Rockwell Automation, Inc. ("plaintiff" or "Rockwell") as short body timing relays. Before the court are the cross-motions for summary judgment of plaintiff and defendant the United States ("Government"). Jurisdiction is had pursuant to 28 U.S.C. § 1581(a) (2000). For the reasons set forth below, the court grants plaintiff's motion for summary

judgment, in part; denies the Government's cross-motion for
summary judgment and finds that plaintiff's merchandise, with
respect to which plaintiff supplied samples to the court, is
properly classified as relays under the Harmonized Tariff
Schedule of the United States ("HTSUS") Heading 8536, which
covers "[e]lectrical apparatus for switching or protecting
electrical circuits, or for making connections to or in
electrical circuits (for example, switches, relays, fuses, surge
suppressors, plugs, sockets, lamp-holders, junction boxes), for a
voltage not exceeding 1,000 V," subject to a duty of 2.7% *ad
valorem*.[1]


BACKGROUND

Plaintiff's merchandise is solid state electrical timing
devices imported from Japan ("subject merchandise")[2] used as
components of integrated electrical systems that may include
several other electrical components.  Their function is to direct
electricity to specific apparatus at a specified time after power

---

[1]     Reference is made to the 1999 version of the HTSUS and
chapter notes, which were in force at the time the subject
merchandise was entered.

[2]     The parties' briefs describe the subject merchandise in
substantially similar language.  *See* Pl.'s Revised Mem. Supp.
Mot. Summ. J. 1-5; Def.'s Mem. Supp. Mot. Summ. J. & Opp'n Pl.'s
Mot. Summ. J. ("Def.'s Mem.") 5 n.2.  Instead of referring to the
subject merchandise as "relays," however, the Government uses the
description "solid state timers."  Def.'s Mem. 7 n.3.

has been applied to the entire electrical system.  The most widely used application of these devices is in a control panel on an assembly operation or conveyor line.

Each timing device consists of a number of electrical parts contained in a small six-sided, plastic box with a front dial and a rear connection port.  Its interior parts are: a set of moveable contact blocks; a set of stationary contact blocks; a wound magnetic coil mounted on a stack of steel laminations; and a circuit board containing various components, including resistors that regulate the period of time between cycles.  *See* Pl.'s Revised Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 1, 3, 4; Def.'s Mem. Supp. Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem.") 5 n.2.

Customs has consistently classified plaintiff's merchandise as "[t]ime switches with clock or watch movement or with synchronous motor: . . . Valued over $5 each," under HTSUS subheading 9107.00.80.  Beginning in 1999, Rockwell regularly disputed Customs's classification, arguing that they were properly classifiable as relays under Heading 8536.  In July, 1999, Customs affirmed its classification of Rockwell's merchandise, describing the devices in the ruling as solid state timing relays, under Heading 9107.  *See* HQ 962138 (July 28, 1999), *reprinted in* 36 Cust. Bull. & Decs. 24 (June 12, 2002), Attach. A ("1999 Ruling") 27, 30-31 ("[W]e find that the Bulletin

700 solid state timing relays are classifiable under subheading 9107.00.80.").  Thereafter, between December 9, 1999, and February 22, 2000, Rockwell entered the subject merchandise under HTSUS subheading 9107.00.80.  *See* Summons (Jan. 9, 2003).  Between November 13, 2000, and January 5, 2001, Customs liquidated Rockwell's entries under HTSUS subheading 9107.00.80, as entered.  *See* Summons (Jan. 9, 2003).

In January 2002, Rockwell timely filed Protest Number 3901-01-100230, contesting Customs's classification of the subject merchandise.  *See* Protest Number 3901-01-100230.  In its supporting papers, Rockwell reasserted its argument that the subject merchandise was properly classifiable under HTSUS Heading 8536.  *See* Rockwell's Mem. P. & A. Supp. Protest 1.

On June 12, 2002, Customs published notice of its intention to modify the 1999 Ruling.  *See* Proposed Modification of Ruling Letter and Revocation of Treatment Relating to Tariff Classification of Relays, 36 Cust. Bull. & Decs. 24 (June 12, 2002).  Nonetheless, on July 23, 2002, it issued HQ 964656 reaffirming those portions of the 1999 Ruling and again classified Rockwell's merchandise under Heading 9107.  *See* HQ 964656 (July 23, 2002), attached as Ex. 3 to Def.'s Mem. ("2002 Ruling").  On August 8, 2002, Customs denied Protest Number 3901-01-100230 with respect to the subject merchandise, stating that its decision was based on the 1999 Ruling.  *See* Protest Number

3901-01-100230.

On January 9, 2003, plaintiff filed a summons with the Court, commencing this action to challenge Customs's denial. By its motion for summary judgment, Rockwell claims that the subject merchandise is properly classifiable under HTSUS Heading 8536. By its cross-motion for summary judgment, the Government urges the court to sustain Customs's classification of the subject merchandise.

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the context of a classification action, "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citations omitted). Under such circumstances, all that remains is the interpretation of the relevant tariff provisions, which is a question of law. *See Boen Hardwood Flooring, Inc. v. United States*, 357 F.3d 1262, 1264 (Fed. Cir.

2004).


                            DISCUSSION

I.   Identification of the Subject Merchandise

     With its motion for summary judgment, plaintiff has provided

what it claims are samples of the subject merchandise to the

court.[3]  The Government, however, contends that Rockwell has

failed to satisfy its burden of identifying these samples as

representative of the subject merchandise.  *See Group Italglass*

*U.S.A., Inc. v. United States*, 16 CIT 766, 767, 798 F. Supp. 729,

730 (1992) ("*Italglass*").  It argues:

          Rockwell has never identified the particular
          models of timers covered by the entries in

---

     [3]     Plaintiff provided eight samples in individual boxes
that have been numbered sequentially from one to eight.  Each
sample is stamped with a variation of the phrase "timing relay."
The samples have the following model numbers: (1) 700-HRM12TU24
Series C (bearing the description "single function timing
relay"); (2) 700-HRM12TA17 Series C (bearing the description "on-
delay timing relay"); (3) 700-HRC12TA17 Series C (bearing the
description "single function timing relay"); (4) 700-HRC12TU24
Series B (bearing the description "on delay timing relay"); (5)
700-HR52TA17 Series B (bearing the description "multi function
timing relay"); (6) 700-HR52TU24 Series B (bearing the
description "multi function timing relay"); (7) 700-HR52TA17
Series C (bearing the description "multi function timing relay");
and (8) 700-HR52TU24 Series C (bearing the description "multi
function timing relay").
     Although plaintiff did not import any Series C timing
relays, plaintiff insists that the "Series C models are
substantially similar to the Series B models," and thus that "the
samples before the Court, whether Series B or Series C, correctly
reflect those short body timing relays that are contained in the
subject entries."  Letter from Curtis W. Knauss to Hon. Richard
K. Eaton of 04/05/07 at 4; *see* Third Pohl Aff. ¶¶ 2-3.

> issue.  Although Rockwell submitted technical
> documentation from Omron and samples
> manufactured by Omron to the Court and to the
> Government, none of this has been shown to
> relate to the specific merchandise covered by
> the specific entries at issue.  That is,
> while the imported merchandise and the
> samples have Rockwell's model numbers on
> them, and their functions may be similar,
> there is absolutely no evidence that the
> electronics inside are the same or that their
> functions are the same.

Def.'s Mem. 10.  The crux of the Government's claim is that plaintiff has not offered evidence that the internal electronics and functioning of the supplied samples, which were manufactured by Omron Corporation, are the same as the electronics and functioning of the entered merchandise, which was manufactured by Fuji Electric Co. Ltd.  *See* Def.'s Resp. Pl.'s Statement of Material Facts Not in Dispute ¶¶ 6, 7 & 8; Def.'s Reply Br. Supp. Mot. Summ. J. & Opp'n Pl.'s Resp. 3-4.

The Government correctly points out that plaintiff "has the burden of demonstrating exactly what merchandise the Court is being called upon to classify."  Def.'s Mem. 9; *Italglass*, 16 CIT at 767, 798 F. Supp. at 730.  An examination of the case law reveals how this burden is to be met.

In *Italglass*, a case challenging the denial of a protest, the plaintiff moved for summary judgment but supplied "no affidavit or other evidence to identify the disputed items actually imported under the entries" in the case.  *Italglass*, 16 CIT at 767, 798 F. Supp. at 730.  The court stated that "[u]nless

stipulated between the parties, plaintiff has the burden of submitting evidence on its motion identifying the specific items of merchandise in the particular entries in the case that are claimed to have been incorrectly classified by Customs."  *Id.*, 798 F. Supp. at 730.  The plaintiff having failed to do so, the court denied its motion for summary judgment.[4]

When an employee affidavit has been presented, however, this Court has upheld its use to identify imported merchandise.  In *E.T.I.C., Inc. v. United States*, 26 CIT 1293 (2002) (not reported in the Federal Supplement), the plaintiff challenged the classification of a tomato product that had previously been the subject of a different action.  The plaintiff supported its motion for summary judgment with the affidavit of one of its employees, who testified that the tomato product at issue was "identical in all respects to that at issue in" the previous case.  *Id*. at 1293.  The defendant submitted an opposing affidavit by a Customs import specialist, who had not examined the product, but relied solely on the invoice descriptions.  *Id*.

---

[4]    The *Italglass* Court permitted the parties to engage in further discovery and to submit supplemental briefing and evidence with respect to plaintiff's motion for summary judgment. In a later stage of the case, the Court noted that the identification issue had been obviated by the plaintiff's supplemental filings and observed that "identification of the subject merchandise under the entries and commercial invoices can be determined with reference to the verbal descriptions, style numbers, and photographs in plaintiff's catalog." *Group Italglass U.S.A., Inc. v. United States*, 17 CIT 226, 227 (1993) (not reported in the Federal Supplement).

at 1293-94.  Finding the E.T.I.C. employee's affidavit
persuasive, the Court granted summary judgment for plaintiff.
*Id*. at 1294 ("The court concludes that the 'heavy juice' referred
to in the Malpica entries is equivalent to the 'puree' mentioned
in [*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439
(Fed. Cir. 1998)], because an E.T.I.C. employee with knowledge
has sworn that the products are the same.").

Here, unlike the plaintiff in *Italglass*, Rockwell has
submitted the Pohl affidavits[5] "to identify the disputed items
actually imported under the entries in this case . . . ."
*Italglass*, 16 CIT at 767, 798 F. Supp. at 730.  Mr. Pohl is a
Senior Project Engineer at Rockwell, whose experience includes
"providing technical support and guidance to customers,
suppliers, professional organizations, and other technical
personnel" with respect to "relays and timing relays produced and
sold for [Rockwell]."  First Pohl Aff. ¶ 1.  Thus, like the
employee of the plaintiff in *E.T.I.C.*, Mr. Pohl is familiar with
the product at issue and his sworn affidavit, which states that
the Fuji-produced short body timing relays "are identical in all

---

[5]     Plaintiff has submitted the "Affirmation of Randy Pohl"
as Exhibit C to its revised motion for summary judgment; the
"Second Affirmation of Randy Pohl" as an attachment to
Plaintiff's Response to Defendant's Motion for Summary Judgment
and Reply in Support of Plaintiff's Motion for Summary Judgment;
and the "Third Affirmation of Randy Pohl" as an attachment to its
letter to the court of April 5, 2007.  Mr. Pohl's sworn
statements shall be referred to as "First Pohl Affidavit,"
"Second Pohl Affidavit" and "Third Pohl Affidavit," respectively.

material respects to the Omron short body timing relays that have been submitted to the Court as samples," supports Rockwell's motion.  Second Pohl Aff. ¶ 16.

The Government insists, however, that plaintiff has failed to sufficiently identify the product contained in the entries. *See* Def.'s Mem. 10-11 (citing *Saab v. United States*, 434 F.3d 1359, 1369 (Fed. Cir. 2006), for the proposition that "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law").

It is, of course, true that on a motion for summary judgment, the movant has the burden of coming forth with evidence to support the factual allegations in its claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted).  The court finds that plaintiff has done so with respect to the issue of identification of some, but not all of the subject entries.

A review of the First Pohl Affidavit reveals that Mr. Pohl

identified some of Rockwell's merchandise by model number: "The
short body timing relays imported in the subject entries are
listed by Rockwell under the following model numbers: 700-
HR52TA17 Series C; 700-HR52TU24 Series C; 700HRM12TU24 Series C;
700-HR52TA17 Series B; 700-HR52TU24 Series B; 700-HRC12TA17
Series C; 700-HRC12TU24 Series B; and 700-HRM12TA17 Series [C]."
First Pohl Aff. ¶ 3; *see also* Third Pohl Aff. ¶ 4 (correcting a
typographical error).  These model numbers match the model
numbers of the samples provided to the court; the samples' model
numbers, in turn, correspond to certain of the model numbers that
appear in the entry documentation.[6]  *Compare* Invoice No. L68842
(Jan. 13, 2000), attached to Entry No. 110-0417823-1 *and* Invoice
No. F78713 (Feb. 17, 2000), attached to Entry No. 110-0418751-3
*with* First Pohl Aff. ¶ 3.

     Based on the forgoing, the court finds that Rockwell has
sufficiently identified the merchandise covered by the entries
with respect to which it has provided samples and model numbers

---

     [6]     A comparison of the sample model numbers and the model
numbers of the merchandise listed in the entry documents
indicates that plaintiff did not provide samples of all models
covered by the entries.  For example, plaintiff did not provide a
sample of 700-HX86SA17 or 700-HX86SU24, which were imported under
entry numbers 110 0417823-1 and 110 0418751-3.  Moreover, Mr.
Pohl's affidavit identifies the eight samples provided to the
court as identical in all material respects to the imported
merchandise, but makes no such statement with respect to imported
merchandise for which no sample was provided.  As such, the
court's decision applies only to the merchandise for which a
sample was provided to the court.

corresponding to the entered merchandise.  It has thus satisfied its burden of coming forth with evidence to support its factual allegations with respect to identification of that merchandise.

Since plaintiff, as the movant, has met its burden with respect to the merchandise for which it produced samples, Rule 56(e) of the rules of this Court provides that the Government, as the adverse party, "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather

> the adverse party's pleading, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

USCIT R. 56(e); *see also United States v. Rockwell Automation, Inc.*, 30 CIT __, __, 462 F. Supp. 2d 1243, 1252 (2006) (where movant has supported its motion as Rule 56 requires, Rule 56(e) requires non-movant to come forward with opposing evidence).  The Government having failed to submit any opposing evidence demonstrating a genuine issue for trial with respect to identification of that portion of the subject merchandise for which the model numbers of the provided samples match the model numbers of the entered merchandise, the court grants partial summary judgment for plaintiff on this issue.

II.  Classification of the Subject Merchandise

The court now turns to the classification of the subject merchandise itself.  Here, the primary question is whether the subject merchandise has a "display or a system to which a mechanical display can be incorporated."  As previously noted, Customs denied plaintiff's protest and classified the subject merchandise under Heading 9107 of the HTSUS.  This heading reads:

> Time switches with clock or watch movement or
> with synchronous motor . . . .

HTSUS 9107.  The terms "clock movements" and "watch movements" are defined in the Additional U.S. Notes and the Notes to Chapter 91, respectively.  "Clock movements" and "watch movements" are defined as

> devices [with a] system capable of
> determining intervals of time, with a display
> *or a system to which a mechanical display can
> be incorporated*.

HTSUS, Ch. 91, Additional U.S. Note 1(d); HTSUS, Ch. 91, Note 3 (emphasis added).  It is undisputed that the merchandise has a system capable of determining intervals of time.[7]  It is also

---

[7]     As described by Mr. Pohl, "the short body timing relays measure a certain time interval and then activate or de-activate a subcircuit."  First Pohl Aff. ¶ 5.  The user sets the length of the delay period, which is

> accomplished by the resistor, capacitor,
> and oscillation timing circuitry.  The
> oscillation circuit produces calibrated
> pulses which are counted by the resistor and
> capacitor circuit.  After the short body

(continued...)

undisputed that the merchandise does not have a mechanical display.  *See* Second Pohl Aff. ¶ 9; First Costello Decl. ¶ 27. Thus, in order for Customs's classification to be sustained the subject merchandise must have "a system to which a mechanical display can be incorporated."

The Government insists that Customs's classification under Heading 9107 is correct, and that Customs's 1999 and 2002 rulings are entitled to deference in accordance with the principles set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (setting forth factors which give a Customs ruling "power to persuade").  *See* Def.'s Mem. 12 ("HQ 962138 and HQ 964656 are entitled to deference.") (citing *United States v. Mead Corp.*, 533 U.S. 218 (2001)).  It argues that it is entitled to prevail in this action as a matter of law because, among other things, the subject merchandise has a clock or watch movement, which although having no mechanical display, has a system capable of incorporating a display.

For its part, Rockwell argues that Customs's classification

---

[7](...continued)
        time delay relay receives a trigger signal
        the timing circuitry begins counting pulses
        until the total count value from external
        settings is achieved.

First Pohl Aff. ¶ 10.  *See also* First Costello Decl. ¶ 23 ("A Rockwell Timer electronically measures [an] interval of time by using an oscillator to generate specific very small intervals of time . . . .").

under Heading 9107 is incorrect and that the subject merchandise is correctly classified under Heading 8536.  Rockwell contends that it is entitled to summary judgment because the subject merchandise does not have a system to which a mechanical display can be incorporated.  *See* Pl.'s Mem. 15.  In addition, plaintiff argues that the 2002 Ruling is not entitled to *Skidmore* deference.  Pl.'s Mem. 19 ("[T]he [2002 Ruling] summarily concluded that the short body [timing relays] at issue 'ha[d] a system to which a mechanical display can be incorporated,' which is an essential element in classification under Heading 9107, HTSUS.").

A.    *Skidmore* Deference

The court first addresses whether Customs's 1999 and 2002 rulings are entitled to *Skidmore* deference.  When determining the degree of deference to be accorded to a Customs ruling, the factors to be considered are "the thoroughness evident in the classification ruling; the validity of the reasoning that led to the classification; consistency of the classification with earlier and later pronouncements; the formality with which the particular ruling was established; and other factors that supply a 'power to persuade.'"  *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (quoting *Skidmore*, 323 U.S. at 140).

The court concludes that those portions of Customs's 1999

and 2002 rulings finding that plaintiff's merchandise has clock

or watch movements are not entitled to *Skidmore* deference because

they are unpersuasive on the question of whether the merchandise

has "a system to which a mechanical display can be incorporated."

HTSUS, Ch. 91, Additional U.S. Note 1(d); HTSUS, Ch. 91, Note 3.

The 1999 Ruling, on which Customs based its denial of

plaintiff's protest, is not persuasive on this issue.  The ruling

sets forth the pertinent provisions of the HTSUS and the

explanatory notes, but it does not contain any discussion or

finding with respect to whether the merchandise has a "display or

a system to which a mechanical display can be incorporated."

Customs's 2002 Ruling is no more persuasive.  It quotes a

report prepared by the Customs laboratory that analyzed

plaintiff's merchandise.  The report stated that each of the

relays

> has electronic circuitry that performs the
> timing functions.  Each of these circuits
> contains a component that is ". . . capable
> of determining intervals of time . . ."  The
> time delay for [one of the relays under
> consideration] is factory set, while it can
> be user-changed in [other relays under
> consideration].  In our opinion, [all of the
> above-mentioned relays] contain a watch or
> clock movement as described in Note 3 or
> Additional U.S. Note 1(d) to HTSUS Chapter
> 91.  We believe that they are "time switches"
> of HTSUS Heading 9107.

HQ 964656 at 4.  Thus, the report addressed only one of the

requirements of a clock or watch movement, i.e., whether the

subject merchandise has a system capable of determining intervals of time.  It did not address the requirement that the merchandise must have a display or a system to which a mechanical display can be incorporated.

In the 2002 Ruling itself, Customs devotes a single sentence to the latter requirement: "Our discussions with the Customs Laboratory indicated that [certain of the components under consideration] have a system to which a mechanical display can be incorporated."  HQ 965646 at 4 (citing definitions of clock movements and watch movements).  This conclusion is not convincing since Customs does not provide any reasoning to support it.  Rather, Customs's conclusion is based on "discussions" with the laboratory, which were not reduced to writing.

Even though Customs has consistently classified plaintiff's merchandise under Heading 9107, it has failed to address the requirement of a "display or system to which a mechanical display can be incorporated" in its rulings.  Thus, the court concludes that Customs's 1999 and 2002 rulings do not contain valid reasoning with respect to, or a thorough consideration of, that issue.  They are therefore not entitled to *Skidmore* deference.

B.    Classification Under HTSUS Heading 9107

The court next turns to the issue of whether the subject merchandise has a system to which a mechanical display can be incorporated, such that it can be said to have a "clock or watch movement," under Heading 9107.

Review of Customs classification decisions involves a dual inquiry.  The first question is the meaning of the HTSUS tariff terms at issue, which is a question of law.  The second question is of a factual nature and requires the court to determine under which HTSUS provision the subject merchandise falls.  *See Bausch & Lomb, Inc.*, 148 F.3d at 1365 (citation omitted).  A statutory presumption of correctness applies to the factual component of Customs's classification decisions, not the legal issue of the meaning of tariff terms.  *See* 28 U.S.C. § 2639(a)(1);[8] *Universal Elecs., Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir.

---

[8]    Subsection 2639(a)(1) provides:

> Except as provided in paragraph (2) of this subsection [providing for civil actions commenced under 28 U.S.C. ¶ 1582], in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

28 U.S.C. § 2639(a)(1).

1997).  The burden lies with plaintiff to demonstrate that Customs's classification is incorrect.  *Universal Elecs.*, 112 F.3d at 492 ("Specifically, the importer must produce evidence (the burden of production portion of the burden of proof) that demonstrates by a preponderance (the burden of persuasion portion of the burden of proof) that Customs' classification decision is incorrect.").

In determining the proper classification of merchandise, the General Rules of Interpretation ("GRI") govern.  *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted) ("The HTSUS General Rules of Interpretation . . . and the Additional U.S. Rules of Interpretation . . . govern the proper classification of all merchandise and are applied in numerical order.").  The court begins with the language of the HTSUS headings, section and chapter notes, as the GRI require.  *See* GRI 1.  If a tariff term is not defined by the statute or the legislative history, its correct meaning is its common, or commercial, meaning.  *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir. 2001).  "To ascertain the common meaning of a term, a court may consult 'dictionaries, scientific authorities, and other reliable information sources' and 'lexicographic and other materials.'"  *Id*. (quoting *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 673 F.2d 1268, 1271 (C.C.P.A. 1982); *Simod Am.*

*Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)).

Finally, the explanatory notes, while not binding law, offer

guidance as to how tariff terms are to be interpreted.  *See Len-*

*Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir.

2003) (noting explanatory notes are "intended to clarify the

scope of HTSUS subheadings and to offer guidance in their

interpretation").

As noted, in order for Customs's classification to be

sustained, the subject merchandise must have a system to which a

mechanical display can be incorporated.  The Government contends

that it has such a system and cites Dr. Richard Costello's

declaration in support of its position.  In his declaration, Dr.

Costello refers to a diagram of the subject merchandise submitted

as an exhibit to plaintiff's memorandum in support of its motion.

Dr. Costello asserts that "the essential blocks or components of

a digital clock movement or a digital timer are: (1) an

oscillator, and (2) a counter."  First Costello Decl. ¶ 25.  He

then states that the oscillator and counter blocks shown in the

diagram

> can be interfaced by a suitable driver
> circuitry to an electrically operated
> mechanical display, such as a watch or clock
> hand . . . .  Such a display would be
> interfaced to the counter contained within
> the Rockwell timer under discussion, to
> provide a mechanical display, if desired . .
> . .  *In a practical sense, constructing such*
> *a mechanical time display would be rather*
> *involved and somewhat complicated, but*

>           *conceptually, or theoretically, it is*
>           *possible.  It could be built.*

First Costello Decl. ¶¶ 26-27 (emphasis added).  The Government
maintains that the statute requires that the incorporation of a
mechanical display be possible, i.e., that it *can* be done - not
that it is commercially practical to do so.  Def.'s Supplemental
Br. 1-2 ("Note 3 [defining "watch movements"] does not state that
incorporating a display has to be practical or commercially
feasible; it has to be able to be done.").

     Plaintiff, on the other hand, argues that the subject
merchandise does not have a system to which a mechanical display
can be incorporated and that the HTSUS contemplates that the
ability to incorporate a mechanical display must be more than a
mere theoretical possibility.  Plaintiff argues that Congress's
use of the word "incorporated"

>           implies that an article has been designed and
>           manufactured to accept . . . a display system
>           with a specific connection interface, not
>           some Rube Goldberg, ad hoc contraption
>           developed after production. . . .  Clearly,
>           the theoretical possibility posited by the
>           government does not relate to the condition
>           of the [short body timing relay] as imported,
>           but merely constitutes speculation as to some
>           post-importation, post-production
>           reconfiguration of the product.

Pl.'s Supplemental Br. 2.

     The court concludes that the subject merchandise does not
have "a system to which a mechanical display can be
incorporated."  In reaching this conclusion, the court agrees

with plaintiff that the word "incorporated" when combined with the word "system" compels the rejection of Customs's classification.  The word "system" means "a complex unity formed of many often diverse parts . . . serving a common purpose." Webster's Third New International Dictionary 2322 (2002). Applied to the words of the HTSUS, the purpose of the "system" at issue here is to facilitate the incorporation of a display into the subject merchandise.  That is, to be classified under Heading 9107 plaintiff's merchandise must have a system whose purpose is to allow the incorporation of a display.[9]

Moreover, the merchandise must have such a system at the time of importation.  *See United States v. Citroen*, 223 U.S. 407, 414-15 (1911) ("The rule is well established that in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.") (internal quotation marks omitted); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994).  As each expert makes clear, the subject merchandise does

------

[9]    Reference to other language in the notes defining "clock movements" (Additional U.S. Note 1(d)) and "watch movements" (Note 3) supports this conclusion.  For example, Additional U.S. Note 1(d) states that clock movements are "devices regulated by . . . any other *system* capable of determining intervals of time."  HTSUS, Ch. 91, Additional U.S. Note 1(d) (emphasis added).  In other words, this system must have as its purpose the capacity to measure time.

not satisfy this requirement. *See* First Costello Decl. ¶ 27 ("In a practical sense, constructing such a mechanical time display would be rather involved and somewhat complicated, but conceptually, or theoretically, it is possible."); Second Pohl Aff. ¶¶ 9 (likening the "scenario of incorporating a display into the subject timing relays [described by Dr. Costello in his declaration] to taking a radio, [and] modifying the circuitry by adding a display to make a television"); 10 ("[T]here is no system to which a mechanical display can be incorporated . . . ."). It is therefore apparent that, at the time of importation, the subject merchandise had no system whose purpose was to facilitate the addition of a display. Therefore, the subject merchandise does not have a "clock or watch movement" and is not properly classifiable under Heading 9107.

    C.   Classification Under HTSUS Heading 8536

Plaintiff has overcome its burden of demonstrating that Customs's classification is incorrect. Thus, in accordance with the holding in *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984), the court now turns to the question of whether Heading 8536, or another provision of the HTSUS, provides the correct classification of the subject merchandise. The court concludes that the merchandise is properly classifiable under HTSUS Heading 8536.

Applying GRI 1, the court must determine the correct

classification "according to the terms of the headings and any relative section or chapter notes . . . ."  GRI 1.  Heading 8536 covers

> [e]lectrical apparatus for switching or protecting electrical circuits, or for making connections to or in electrical circuits (for example, switches, relays, fuses, surge suppressors, plugs, sockets, lamp-holders, junction boxes), for a voltage not exceeding 1,000 V . . . .[10]

Although the terms of Heading 8536 are not defined in the section or chapter notes, the explanatory notes, a recognized, albeit non-binding, guide to interpreting tariff terms, provide:

> Relays are electrical devices by means of which the circuit is automatically controlled by a change in the same or another circuit. They are used, for example, in telecommunication apparatus, road or rail [signaling] apparatus, for the control or protection of machine-tools, etc.
> The various types can be distinguished by, for example:
>
> (1) The electrical means of control used: electromagnetic relays, permanent magnet relays, thermo-electric relays, induction relays, electro-static relays, photoelectric relays, electronic relays, etc.
>
> (2) The predetermined conditions on which they operate: maximum current relays, maximum or minimum voltage relays, differential relays, fast acting cut out relays, time delay relays, etc.

4 World Customs Org., Harmonized Commodity Description and Coding

---

[10]    Because there is no dispute that the merchandise does not exceed 1,000 volts, this aspect of Heading 8536 is satisfied.

System Explanatory Notes ("Explanatory Notes") § 85.36(I)(C), at 1504 (1998); *see also* Webster's Third New International Dictionary 1917 (2002) (defining relay as "an electromagnetic device for remote or automatic control that is actuated by a variation in conditions of an electric circuit and that operates in turn other devices (as switches, circuit breakers) in the same or a different circuit").

The undisputed facts together with the court's observations lead to the conclusion that the subject merchandise meets the definition of a relay. *See Dolly, Inc. v. United States*, 27 CIT 1597, 1609, 293 F. Supp. 2d 1340, 1350 (2003). That is to say, the subject merchandise is an "electrical device[] by means of which [a] circuit is automatically controlled by a change in the same or another circuit." Explanatory Notes § 85.36(I)(C), at 1504. As described by the parties and noted in the background section, *supra*, the subject merchandise is used in a control panel on an assembly operation or conveyor line. When electrical power has been applied to the electrical system of which the subject merchandise is a component, the subject merchandise directs electrical power to specific apparatus at the rate specified by the user. The internal components of the subject merchandise include stationary and moveable parts to which electric power is applied in order to complete a circuit. Heading 8536 thus accurately describes the use and function of

the merchandise at issue.  Furthermore, it specifically contemplates, *eo nomine*,[11] the classification of relays thereunder, i.e., relays that are used to make connections to electrical circuits.  The subject merchandise is thus properly classifiable as a relay under HTSUS Heading 8536.


CONCLUSION

The court finds that the subject merchandise, with respect to which plaintiff supplied samples to the court, i.e., those whose model numbers match the model numbers of the imported merchandise, is properly classifiable under HTSUS Heading 8536. Summary judgment is granted in favor of Rockwell as to that merchandise.  The Government's cross-motion is denied.  The parties are directed to confer and jointly submit, no later than May 17, 2007:

(1) a proposed Judgment, specifically identifying the merchandise covered by this opinion; and

---

[11]    *Eo nomine* means "[b]y or in that name."  Black's Law Dictionary 575 (8th ed. 2004).  "[A]n *eo nomine* provision . . . describes a commodity by a specific name, usually one common in commerce.  Absent limiting language or indicia of contrary legislative intent, such a provision covers all forms of the article."  *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

   (2) a proposed Scheduling Order for trial with respect to
the remaining merchandise.


                                        /s/ Richard K. Eaton
                                        Richard K. Eaton

Dated:     May 7, 2007
           New York, New York